155 P.3d 1138

**Glenn TANIGUCHI, Plaintiff–Appellant**

v.

**ASSOCIATION OF APARTMENT OWNERS OF KING MANOR, INC., a Hawai'i Non–Profit Corporation, Irvin King, Betty Takahashi, Henry Kennedy, Lynn Schneider, Audrey Asahina, Defendants–Appellees.**

**and**

**John Does 1–10; Jane Does 1–10; Doe Partnerships 1–10; Doe Corporations 1–10; and Doe Entities 1–10, Defendants.**

**No. 27500.**

Supreme Court of Hawai'i.

April 12, 2007.

---

John A. Morris and Gordon M. Arakaki (Ekimoto & Morris), Honolulu, on the briefs, for defendants-appellees.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

Plaintiff–Appellant Glenn Taniguchi (Appellant) appeals from the August 24, 2005 judgment of the circuit court of the first circuit (the court)[1] granting the Motion for Summary Judgment of Defendants–Appellees Association of Apartment Owners of King Manor, Inc. (the Association), Irving King (King), Betty Takahashi, Henry Kennedy (Kennedy), Lynn Schneider, and Audrey Asahina [collectively, Appellees] and denying Appellant's October 13, 2004 Motion to Set Aside the Order and June 14, 2005 Motion for Partial Summary Judgment as to Appellant's First Cause of Action.

We hold that (1) Hawai'i Revised Statutes (HRS) § 514A–82(a)(14) (Supp.2005),[2] which prohibited a resident manager of a condominium from serving on its board of directors, originally enacted as HRS § 514–20 on June 9, 1976, 1976 Haw. Sess. L. Act 239, §§ 3, 7 at 758–59, does not apply to the Association inasmuch as the Association's original bylaws were recorded prior to the enactment of HRS § 514–20, (2) the inclusion of Section 3.01 in the Association's First Restated Bylaws pursuant to HRS § 514A–82(a)(14), which prohibited a resident manager of a condominium from serving on the Board of Directors of the Association (the Board), exceeded the purview of HRS § 514A–82.2(b) (1993)[3] relating to restatement of bylaws, (3)

Michael J. Park, Glenn T. Taniguchi, and Peter Y.L. Pong, on the briefs, for plaintiff-appellant.

1. The Honorable Victoria S. Marks presided.

2. HRS § 514A–82(a)(14) relating to "Contents of bylaws" stated:

 (a) The bylaws should provide for at least the following:
 . . . .
 (14) No resident manager of a condominium shall serve on its board of directors[.]
 HRS § 514A–82(a)(14) was subsequently repealed by 2004 Haw. Sess. L. Act 164, § 26 at 813.
 Effective July 1, 2005, a similar restriction exists in HRS § 514B–107(b) (2006), which per-

tains to "Board; limitations." 2004 Haw. Sess. L. Act 164, § 2 at 765. HRS § 514B–107(b) states, "No resident manager or employee of a condominium shall serve on its board."

3. HRS § 514A–82.2, entitled "Restatement of declaration and bylaws," stated in pertinent part:

 (a) Notwithstanding any other provision of this chapter or of any other statute or instrument, an association of apartment owners may at any time restate the declaration of condominium property regime of the project or the bylaws of the association to set forth all

Appellant's purported "material facts" pertaining to the Board's failure to disclose to members of the Association (a) "the true nature of the controversy" herein, (b) "the exact language of the provisions in controversy," (c) "the rationale for each provision in controversy," (d) the Board's position "against adoption of the provision in controversy," (e) the Board's "inten[tion] to use any proxies granted to them," and (f) that the "failure to ratify the bylaws could mean the [A]ssociation would have to bring this controversy to the courts," viewed in a light most favorable to Appellant, do not raise a genuine issue of material fact that the Board breached a fiduciary duty of disclosure owed to members of the Association, (4) in any event, there is no effective remedy for Appellant's breach of fiduciary duties claims and the claim that the president of the board solicited proxies in violation of HRS § 514A–82(b)(4) (Supp.2005),[4] (5) and, furthermore, such

> amendments thereof by a resolution adopted by the board of directors.
>
> (b) *An association of apartment owners may at any time restate* the declaration of condominium property regime of the project or *the bylaws of the association to amend the* declaration or *bylaws as may be required in order to conform with the provisions of this chapter or of any other statute, ordinance, rule or regulation enacted by any governmental authority, by a resolution adopted by the board of directors, and the restated declaration or bylaws shall be as fully effective for all purposes* as if adopted by the vote or written consent of the apartment owners; *provided that* any declaration of condominium property regime or *bylaws restated pursuant to this subsection shall identify each portion so restated and shall contain a statement that those portions have been restated solely for purposes of information and convenience, identifying the statute, ordinance, rule, or regulation implemented by the amendment, and that in the event of any conflict, the restated declaration or bylaws shall be subordinate to the cited statute, ordinance, rule, or regulation.*

(Emphases added.) HRS § 514A–82.2 was subsequently repealed by 2004 Haw. Sess. L. Act 164, § 26 at 813.

On July 1, 2005, HRS § 514B–109 (2006), entitled "Restatement of declaration and bylaws," took effect. 2004 Haw. Sess. L. Act 164, § 2 at 767. HRS § 514B–109 states:

> (a) Notwithstanding any other provision of this chapter or of any other statute or instrument, an association at any time may restate the declaration or bylaws of the association to set forth all amendments thereto by a resolution adopted by the board.
>
> (b) Subject to section 514B–23, an association at any time may restate the declaration or bylaws of the association to amend the declaration or bylaws as may be required in order to conform with the provisions of this chapter or of any other statute, ordinance, or rule enacted by any governmental authority, or to correct the percentage of common interest for the project so it totals one hundred per cent, by a resolution adopted by the board. If the restated declaration is to correct the percentage of common interest for the project so that it totals one hundred per cent, the proportion of each unit owner's percentage of common interest shall remain the same in relation to the other unit owners. The restated declaration or bylaws shall be as fully effective for all purposes as if adopted by a vote or written consent of the unit owners.
>
> Any declaration or bylaws restated pursuant to this subsection shall:
> (1) Identify each portion so restated;
> (2) Contain a statement that those portions have been restated solely for purposes of information and convenience;
> (3) Identify the statute, ordinance, or rule implemented by the amendment; and
> (4) Contain a statement that, in the event of any conflict, the restated declaration or bylaws shall be subordinate to the cited statute, ordinance, or rule.
>
> (c) Upon the adoption of a resolution pursuant to subsection (a) or (b), the restated declaration or bylaws shall set forth all of the operative provisions of the declaration or bylaws, as amended, together with a statement that the restated declaration or bylaws correctly sets forth without change the corresponding provisions of the declaration or bylaws, as amended, and that the restated declaration or bylaws supersede the original declaration or bylaws and all prior amendments thereto. If the restated declaration corrects the percentage of common interest as provided in subsection (b), the restated declaration shall also amend the recorded conveyance instruments that govern the unit owner's interest in the unit.
>
> (d) The restated declaration or bylaws must be recorded and, upon recordation, shall supersede the original declaration or bylaws and all prior amendments thereto. In the event of any conflict, the restated declaration or bylaws shall be subordinate to the original declaration or bylaws and all prior amendments thereto.

4. HRS § 514A–82(b)(4) relating to "Contents of bylaws," stated:

> (b) In addition to the requirements of subsection (a), the bylaws shall be consistent with the following provisions:
> . . . .
> (4) No resident manager or managing agent shall solicit, for use by the manager or managing agent, any proxies from any apartment owner of the association of owners that employs the resident manager or managing

claims do not fall under the exception to the mootness doctrine, and (6) viewed in a light most favorable to Appellant, there is no genuine issue of material fact that the Second Restated Bylaws, adopted without the provisions disputed, are defective.

Therefore, the court properly granted Appellees' motion for summary judgment, and properly denied Appellant's motion to set aside the order and motion for partial summary judgment. Accordingly, the August 24, 2005 judgment of the court is affirmed.

I.

A.

On September 9, 1968, the Association was created under the provisions of the "Horizontal Property Act," chapter 107A, Revised Laws of Hawai'i 1955, with the filing of its Declaration of Horizontal Property Regime in the Bureau of Conveyances (the Bureau). Also on that date, the Association recorded its original bylaws with the Bureau. The original bylaws did not restrict a resident manager of the condominium from serving on the Board.

On June 9, 1976, the Hawai'i legislature adopted Act 239, which amended the former HRS § 514–20 entitled "Contents of bylaws," and added the following underscored language:

The bylaws shall provide for at least the following:

. . . .

agent, nor shall the resident manager or managing agent cast any proxy vote at any association meeting except for the purpose of establishing a quorum. Any board of directors that intends to use association funds to distribute proxies, including the standard proxy form referred to in paragraph (3), shall first post notice of its intent to distribute proxies in prominent locations within the project at least thirty days prior to its distribution of proxies; provided that if the board receives within seven days of the posted notice a request by any owner for use of association funds to solicit proxies accompanied by a statement, the board shall mail to all owners either:

(A) A proxy form containing the names of all owners who have requested the use of association funds for soliciting proxies accompanied by their statements; or

(15) No resident manager of a condominium shall serve on the board of directors

1976 Haw. Sess. L. Act 239, § 3 at 758–59 (emphasis added). The legislature specified that Act 239 "not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun, before [June 9, 1976]." 1976 Haw. Sess. L. Act 239, §§ 5, 7 at 760.

On January 1, 1978, the legislature repealed HRS chapter 514, "Horizontal Property Regimes." 1977 Haw. Sess. L. Act 98, §§ 3, 5 at 181. Also as of January 1, 1978, HRS chapter 514A, "Horizontal Property Regimes," was enacted as a restatement of HRS chapter 514, without substantive change. 1977 Haw. Sess. L. Act 98, §§ 1, 5 at 162, 181. The former HRS § 514–20 was renumbered as HRS § 514A–82. Stand. Comm. Rep. No. 271, in 1977 Senate Journal, at 970.

On October 7, 1985, the Association recorded its "First Amendment to the By-laws of King Manor" in the Bureau.

On January 16, 2001, the Board resolved to restate its bylaws, entitled "First Restated Bylaws," pursuant to HRS § 514A–82.2.

On February 21, 2001, the Board recorded the First Restated Bylaws at the Bureau. The First Restated Bylaws organized into one document all existing provisions in the Association's original bylaws as well as the October 7, 1985 First Amendment. As pertinent here, these bylaws added Section 3.01

(B) A proxy form containing no names, but accompanied by a list of names of all owners who have requested the use of association funds for soliciting proxies and their statements.

The statement shall not exceed one hundred words, indicating the owner's qualifications to serve on the board and reasons for wanting to receive proxies[.]

. . . .

The provisions of this subsection shall be deemed incorporated into the bylaws of all condominium projects existing as of January 1, 1988, and all condominium projects created after that date.

HRS § 514A–82(b)(4) was subsequently repealed by 2004 Haw. Sess. L. Act 164, § 26 at 813. Currently, HRS § 514B–123 (2006) entitled, "Association meetings; voting; proxies," governs proxies.

which provided, "No resident manager shall serve on the Board of Directors," purportedly to comply with HRS § 514A–82(a)(14), which as stated previously, was originally adopted as Act 239 on June 9, 1976.[5] 1976 Haw. Sess. L. Act 239, § at 758–59. Also on February 21, 2001, all pre-existing members of the Association were mailed a copy of the First Restated Bylaws.

### B.

On September 16, 2001, after the Association had experienced problems with several of its resident managers, the Board hired two of its existing members, King and Ruby Clairmont (Clairmont), to share the job of resident manager. As compensation, King was permitted to occupy the apartment provided for the resident manager, and Clairmont received the salary of the resident manager. While working as resident managers of the condominium, King and Clairmont continued to serve as members of the Board, with King continuing in his capacity as board president.

Thereafter, Appellant, an attorney and member of the Association, approached the Board about Section 3.01 of the First Restated Bylaws which as noted above states, "No resident manager shall serve on the board of directors." [6]

On September 28, 2001, the Association's attorney, John Morris (Morris), answered the Board's inquiry as to "whether a resident manager of a condominium project can serve on its board of directors." Morris opined that as applied to the Association, "a resident manager of a condominium project can serve on its board of directors." Morris specifically concluded that (1) HRS § 514A–82(a)(14) only applies prospectively and, therefore, did not apply to the Association, and (2) because

HRS § 514A–82(a)(14) did not apply to the Association, it could not be included in the First Restated Bylaws, restated pursuant to HRS § 514A–82.2, as it was not required by law.

On August 14, 2002, members of the Association were sent statements from William Enriques (Enriques), King,[7] Clairmont, and Kennedy, candidates for the Board.

On September 17, 2002, Appellant sent a letter to the Board which stated that in his opinion, the Board should present the members of the Association with the First Restated Bylaws "for approval or disapproval at the next annual [A]ssociation meeting."

On October 3, 2002, the Board sent a letter to members of the Association pertaining to "amendment to bylaws." The letter stated,

Several apartment owners have asked that the owners be *allowed to vote at the upcoming annual meeting to approve the restated bylaws.* The board has agreed to that request.

The restated bylaws were completed by the [A]ssociation's prior attorney in 2001, approved by the board, and recorded . . . . A problem has now arisen because of certain changes which were made in the restated bylaws. The law permits the board to restate the declaration and bylaws, *without* owner approval, only to include: (i) all changes *already* approved by the owners; and (ii) any changes *required* by law. Any other changes *must* be approved by the owners.

Unfortunately, *the restated bylaws for King Manor include provisions from the condominium law which are not required by law and were not approved by the owners. Therefore, those provisions should not have been included in the restatement.*

5. The First Restated Bylaws included other provisions that were purportedly added to comply with the requirements of HRS § 514A–82(a). However, those provisions are not at issue.

6. As noted above, this language was added to comply with HRS § 514A–82(a)(14).

7. The Statement of King reads:
 This year's election is a critical one for King Manor. Either we continue the progress we

have made in recent years, or we risk returning to the days when the Board of Directors was plagued by fractious disagreements among its members. The current members of Board of Directors are dedicated to making King Manor a better building. I urge all owners to re-elect [Clairmont], [Kennedy] and me to the board. If re-elected, I will pledge to continue my efforts to make King Manor a better investment for everyone.

Nevertheless, 65 percent of the owners can *vote* to include those provisions in the restated bylaws. Since and [sic] several owners have asked that the owners be allowed to vote on those provisions at the annual meeting, and since the board has agreed to that request, the issue will be presented for a vote at the upcoming annual seminar (on 15 October 2002), so the owners can decide.

*For your information, the following provisions are included in the restated bylaws but are not required by law (but can be approved by 65 percent of the owners).*

. . . .

*3.01 . . .*

*Stating that no resident manager can serve on the board . . . .*

Please review those sections and be ready to vote for or against them at the annual meeting.

(Some emphases added and some in original.)

At the Association's annual meeting held on October 15, 2002, the membership voted against including the provisions from HRS § 514A–82(a) in the First Restated Bylaws, which as noted before provided that "[n]o resident manager shall serve on the board of directors." Also at the October 15, 2002 annual meeting, King, Clairmont, and Kennedy were elected to the Board.

On November 4, 2003, the Board resolved to restate the bylaws a second time in a document entitled "Second Restated By-laws." As set forth by Appellant, the Second Restated Bylaws "stripp[ed] from the bylaws the ban [regarding a resident manager serving on the Board] at the center of this controversy and other provisions from HRS § 514A–82(a) that were enacted into the statute after the King Manor was established in 1968."

In February 2004, Clairmont sold her apartment. She resigned from the Board and as resident manager effective February 7, 2004.

On March 3, 2004, Appellant filed a Verified Complaint against Appellees praying for declaratory and injunctive relief in Counts I through IV as follows:

1. That [the c]ourt issue a ruling declaring that *[the Association's First Restated] By–Laws, recorded on February 21, 2001, is the legal and valid By–Laws that governs [the Association] and its membership and, that Article III, Section 3.01, page 5, restricting a resident manager from serving on the board of directors is legally valid* and subject to enforcement.

2. That [the c]ourt issue a ruling declaring that notwithstanding the legality of the restated By–Laws of [the Association], *[King]* as President of the Board of Directors and former board member *and* resident manager *[Clairmont],* as a member[ ] of the Board of Directors of [the Association], *were without authority to assume the position of resident managers unless and until such time, that the most current recorded By–Laws of [the Association] permitted resident managers to serve on the board of directors.*

3. That [the c]ourt issue a ruling declaring that *the board of directors of [the Association] failed to satisfy the fiduciary standard imposed by statute, HRS § 514A–82.4,* in carrying out their duties for the reasons stated in Count III prior and, order the seats of board members who sanctioned the prior alleged acts vacated and the holding of a new election to fill the vacant seats.

4. That [the c]ourt issue a ruling declaring that *[King] and former board member and resident manager [Clairmont] violated HRS [§ ]514A–82(b)(4) when they solicited proxies prior to the October 2002 annual meeting* and nullify the nomination for and election to board of director seat of [King] at the October 2002 annual meeting and, order that [Enriques] is elected to the board of directors as he was one of only two valid nominations for the three open seats on the board at the October 2002 annual meeting.

(Emphases added.) At the time of filing, the Association was regulated under HRS Chapter 514A, "Condominium Property Regimes."[8]

---

**8.** HRS chapter 514A was scheduled for repeal on July 1, 2006, by 2005 Haw. Sess. L. Act 93, § 6

On March 11, 2004, the Board recorded the Second Restated Bylaws of the Association at the Bureau pursuant to HRS § 514A–82.2.

By March 22, 2004, the Board hired a new resident manager to replace King.

On March 29, 2004, Appellant filed his First Amended Verified Complaint. Appellant prayed for the declaratory and injunctive relief as requested in his Verified Complaint in Counts I through IV, and also added Count V in which he prayed that the court "issue a ruling invalidating [the Association's] 'Second Restated By–Laws' filed on March 11, 2004 and recorded after being served this declaratory action and, restoring as the lawful governing document of [the Association] the [First Restated Bylaws] recorded on February 21, 2001."

On August 18, 2004, Appellant filed five separate motions for partial summary judgment as to Counts I through V of his Verified Complaint (as amended in his First Amended Verified Complaint).

On September 14, 2004, the Association filed a "Memorandum in Opposition to [Appellant's] Motion for Partial Summary Judgment."

On September 23, 2004, the court held a hearing on Appellant's motions.

On October 13, 2004, the court filed its "Order Denying [Appellant's] Motions for Partial Summary Judgment as to [Appellant's] First, Second, Third, Fourth, and Fifth Causes of Action filed on August 18, 2004." In the order, the court stated:

1. Summary judgment as to [Appellant's] First Cause of Action is denied because *the law did not require or authorize the Board of Directors to include [HRS § ]514A–82(a)(12), 514A–82(a)(14), 514A–82(a)(16), 514A–82(a)(18) in a restatement of the bylaws of [the Association]. Therefore, those sections should not have been part of the [First Restated Bylaws] dated*

*February 13, 2001,* and recorded in the Bureau of Conveyances of the State of Hawai'i as Document No. 2001–023374.

2. Summary judgment as to [Appellant's] Second Cause of Action is denied because *the law did not prohibit a director of [the Association] from serving on the [B]oard because the project is not subject to [HRS § ]514A–82(a)(14). Therefore, the [Board] did not violate the law by allowing [King] and [Clairmont] to serve on the Board.*

3. Summary judgment as to [Appellant's] Third Cause of Action is denied because *the Board members did not act in bad faith or in violation of their fiduciary duty when, at the October 2002 Annual Meeting, they asked the members of [the Association] to ratify the [First Restated Bylaws] dated February 13, 2001 and recorded in the Bureau of Conveyances of the State of Hawai'i as Document No. 2001–023374.*

4. Summary judgment as to [Appellant's] Fourth Cause of Action is denied because *[Appellant] submitted no facts to prove that [King] solicited and voted proxies at the October 2002 Annual Meeting of [the Association].*

5. Summary judgment as to [Appellant's] Fifth Cause of Action is denied because *the apartment owners voted at the October 15, 2002 Annual Meeting of [the Association] not to include [HRS § ]514A–82(a)(12), 514A–82(a)(14), 514A–82(a)(16), or 514A–82(a)(18) in the restatement of the bylaws of [the Association]; the board approved a second restatement of the bylaws to implement that decision; and the law did not require those sections to be included in the bylaws of [the Association].* Therefore, *the Second Restated By–Laws* of the Association of Apartment Owners of King Manor, dated March 10, 2004 and recorded in the Bureau of Con-

at 237, but 2006 Haw. Sess. L. Act 273, § 33 at 1145, repealed 2005 Haw. Sess. L. Act 93, § 6 at 237, deleting the repeal of HRS chapter 514A. Parts and sections of HRS chapter 514A that were repealed by other acts remain repealed.

Effective July 1, 2005, Act 164 sought to "update, clarify, organize, deregulate, and provide for consistency and easy of use of the condomini-

um property regimes law,' " as directed by 2000 Haw. Sess. L. Act 213. 2004 Haw. Sess. L. Act 164, § 1 at 756. Thus, the legislature amended the HRS by adding a new chapter, HRS chapter 514B, also referred to as the "Condominium Property Act." 2004 Haw. Sess. L. Act 164, § 2 at 756.

veyances of the State of Hawai'i as Document No. 2004–050766 *were properly restated by the Board and properly signed by [King] on behalf of the Board.*

(Emphases added.)

On June 6, 2005, Appellees filed a "Motion for Summary Judgment" on the basis that because the court had "ruled against [Appellant] as a matter of law on his Motions for Partial Summary Judgment on [Appellant's] First, Second, Third, and Fifth Causes of Action filed herein on August 18, 2004" and "ruled against [Appellant] on his Motion for Partial Summary Judgment on his Fourth Cause of Action filed herein on August 18, 2004[,]" "[t]here [were] not remaining genuine issues of material fact and [it was] therefore entitled to the entry of summary judgment."

On June 14, 2005, Appellant filed his "Motion to Set Aside the Order Filed Herein on October 13, 2004 and [Appellant's] Motion for Partial Summary Judgment as to [Appellant's] First Cause of Action (Restatement of Bylaws Effective on February 21, 2001, pursuant to HRS § 514A–82.2(b))." [9]

On July 19, 2005, the court held a hearing on (1) Appellees' June 6, 2005 Motion for Summary Judgment, and (2) Appellant's June 14, 2005 Motion to Set Aside the Order and Motion for Partial Summary Judgment.

On August 24, 2005, the court granted Appellees' June 6, 2005 Motion for Summary Judgment, and denied Appellant's June 14, 2005 Motion to Set Aside the Order and Motion for Partial Summary Judgment. Also on that date, final judgment was entered in favor of Appellees and against Appellant as to all claims. [10]

9. Subsequently, on July 8, 2005, Appellant filed his "Memorandum in Opposition to [Appellees'] Motion for Summary Judgment."

Also on July 8, 2005, the Association filed its "Memorandum in Opposition to [Appellant's] Motion to Set Aside the Order Filed Herein on October 13, 2004."

On July 14, 2005, the Association filed its "Memorandum in Reply to [Appellant's] Memorandum in Opposition to [Appellees'] Motion for Summary Judgment Filed on June 6, 2005."

On July 15, 2005, Appellant filed his "Reply Memorandum in Support of [Appellant's] Motion to Set Aside the Order Filed Herein on October

On September 15, 2005, Appellant filed his Notice of Appeal.

## II.

Appellant raises the following four points of error on appeal:

[ (1) ] *The [court] erred when it granted summary judgment for [Appellees] by ruling as a matter of law, that the prospective provisions in HRS § 514A–82(a) do not apply to established associations that pre-date the enactment of a provision therein and, that HRS § 514A–82(a)(14) does not apply to King Manor because the [A]ssociation was established in September of 1968 before the enactment of the provision in June of 1976, rather than ruling on a prospective basis, HRS § 514A–82(a) provisions apply to established associations provided vested rights are not impaired.*

[ (2) ] *The [court] erred in granting summary judgment for [Appellees] as to [Appellant's] [b]reach of [f]iduciary [d]uties claim as there existed triable issues of material fact, such as whether the board acted with the utmost of candor and good faith* towards the membership when they purposely and intentionally limited information to members about the controversy and effectively blocked attempts by [Appellant] to have the matter ended by way of member ratification of the bylaws on record at the [Bureau].

[ (3) ] *The [court] erred in granting summary judgment for [Appellees] as to [Appellant's] claim that the president of the board of directors who also was the resident manager of the [A]ssociation, vio-*

13, 2004 and for Partial Summary Judgment as to [Appellant's] First Cause of Action."

10. On September 7, 2005, Appellees filed a "Motion for Attorneys' Fees and Costs." Appellant responded on September 15, 2005 with his "Memorandum in Opposition to Appellees' Motion for Attorneys' Fees and Costs." On September 27, 2005, Appellees filed its "Reply Memorandum" for their September 7, 2005 motion. On September 30, 2005, Appellant filed his "First Supplemental Memorandum in Opposition to Motion for Attorneys' Fees and Costs." On November 30, 2005, the court denied Appellees' Motion for Attorneys' Fees and Costs.

lated *HRS § 514A–82(b)(4)*, which prohibited a resident manager from soliciting proxies, and/or voting those proxies at an association meeting, *for there remained genuine issues of material fact, which consisted of whether the letter sent by the resident manager,* stating his qualifications and desire to be reelected to the board of directors for the contested election held at the October 15, 2002 annual meeting, that was included in the same mailing as the notice of annual meeting and blank proxy forms, *constituted a solicitation of proxies.*

[ (4) ] *The [court] erred in granting summary judgment for [Appellees] as to [Appellant's] claim that the so-called Second Restated Bylaws were defective* and should be stricken from the [Bureau], *because there remained genuine issues of material fact to be adjudicated, such as (1) whether the signing of the document by the president who held a conflict of interest in the matter as resident manager, (2) whether the lack of prior board adoption of the restatement, and (3) whether the lack of statutory authority for the changes reflected in the restatement, were fatal errors to the document.*

(Emphases added.)

Appellant requests that this court "(1) reverse and vacate the [court's final judgment], (2) remand the case for entry of an order granting partial summary judgment in favor of [Appellant] as to Count I of the complaint . . . and [deny Appellees'] motion for summary judgment, and (3) remand the case for trial on all other counts."

### III.

■ "An award of summary judgment is reviewed *de novo* under the same standard applied by the circuit court." *French v. Hawai'i Pizza Hut, Inc.* 105 Hawai'i 462, 466, 99 P.3d 1046, 1050 (2004) (citing *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 104, 839 P.2d 10, 22 (1992)) (other citations

omitted). The standard for granting a motion for summary judgment is well settled:

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.* A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. *The evidence must be viewed in the light most favorable to the non-moving party.* In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Bremer v. Weeks,* 104 Hawai'i 43, 51, 85 P.3d 150, 158 (2004) (quoting *Fed. Credit Union v. Keka,* 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000) (citations, internal quotation marks, and some brackets omitted)) (emphases added).

### IV.

■ As to issue (1), applying his proffered definition of "prospective," Appellant maintains that resident managers have been prohibited from serving on the Board (a) pursuant to HRS § 514A–82(a)(14) since the statute's enactment on June 9, 1976, and (b) pursuant to Section 3.01 of the 2001 First Restated Bylaws, restated pursuant to HRS § 514A–82.2(b).[11] He argues that because no resident manager sat on the Board prior to June 9, 1976, and the right to do so was not granted in any of the Association's legal documents, no vested rights were impaired on June 9, 1976. Thus, Appellant contends that when King "assumed the resident manager position on September 16, 2001, without first relinquishing his board seat, he violated the ban in HRS § 514A–82(a)(14) and Section 3.01" of the First Restated Bylaws.[12]

---

**11.** It appears that Appellant argues that Section 3.01 of the First Restated Bylaws was properly included pursuant to the restatement procedure in, specifically, HRS § 514A–82.2(b).

**12.** As to issue (1), Appellant contends that "HRS § 514A–82(a) applies to established condomini-

ums 'prospectively' so long as it does not impair vested rights," insofar as (i) "[Appellees] entirely misconstrue[s] the meaning of the terms, 'prospective,' " (ii) "[t]he language of HRS § 514A–82(a), is unmistakably clear in requiring all associations to adhere to the bylaw provisions therein," (iii) "[l]egislative history does not grant a

## V.

■ It is observed that "prospective" is defined as "[e]ffective or operative in the future[.]" *Black's Law Dictionary* 1259 (8th ed.2004). On the other hand, "retrospective" or "retroactive" is defined as "extending in scope or effect to matters that have occurred in the past." *Id.* at 1343. This court has embraced Justice Story's definition of a "retrospective law":

> Every statute which takes away or *impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty or attaches a new disability in respect to transactions or considerations already past, must be deemed retrospective.*

*Graham,* 63 Haw. at 545, 632 P.2d at 652 (internal quotation marks and citations omitted) (emphasis added); *see also Chang,* 42 Haw. at 534 (stating that "[a] retroactive or retrospective law, in the legal sense, is one that takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect of transactions or considerations already past" and that

a statute "is retroactive only when it is applied to rights acquired prior to its enactment" (internal quotations marks and citation omitted)).

Here, assuming *arguendo* that no vested rights would be impaired as Appellant asserts, if HRS § 514A–82(a)(14) were applied as Appellant requests, the statute would nevertheless have "retrospective" application under this court's established case law. *See Graham,* 63 Haw. at 545, 632 P.2d at 652; *see also Chang,* 42 Haw. at 534. Appellant's definition of prospective fails to consider that even if a statute does not impair vested rights, such a statute may have retrospective effect if it *"creates a new obligation, imposes a new duty or attaches a new disability in respect to transactions or considerations already past* [.]" *Graham,* 63 Haw. at 545, 632 P.2d at 652 (internal quotation marks and citations omitted) (emphasis added); *see also Chang,* 42 Haw. at 534.

As set forth by Appellees, "[a] condominium property regime is created when a developer executes and records a master deed, declaration, and bylaws pursuant to HRS §§ 514A–20 [ (2006) [13]] and 514A–81

---

total exemption for established associations, unless one defines 'prospective' as [Appellees,]" (iv) "[t]he correct legal definition for 'prospective' is supplied by this Court in legal precedent," (v) "[a]pplying *Graham [Constr. Supply, Inc. v. Schruder,* 63 Haw. 540, 632 P.2d 649 (1981),] and [*Employees Ret. Sys. v.] Chang*[, 42 Haw. 532 (1958),] to HRS § 514A–82, [Op. Att'y Gen. 85–6 (1985) ] held that established associations are to comply with regulations in HRS § 514A–82 unless vested rights or past transactions are affected," (vi) "[t]he recently enacted recodification of HRS Chapter 514A rejects [Appellees'] definition for 'prospective,' " and (vii) "[Appellees'] definition for 'prospective' must be rejected for it produces absurd results[,]" inasmuch as (a) "[Appellees] will make it virtually impossible for the legislature to regulate practices in an established association," (b) "[Appellees'] interpretation will balkanize condominium regimes across the State."

Appellant's arguments as to (i)-(iv) appear to be appropriately summarized by issues (1)(a) and (b), as designated in the text. *See supra.*

As to Appellant's argument (v), it must be observed that " 'Attorney General's opinions are highly instructive but are *not binding upon this court.*' " *In re Robert's Tours & Transp., Inc.,* 104 Hawai'i 98, 107 n. 15, 85 P.3d 623, 632 n. 15 (quoting *Kepo'o v. Watson,* 87 Hawai'i 91, 99 n. 9, 952 P.2d 379, 387 n. 9 (1998)) (emphasis added). In light of the discussion *infra,* Appel-

lant's argument as to the attorney general opinion is unpersuasive.

As to Appellant's argument (vi), Appellant cites to *Keliipuleole v. Wilson,* 85 Hawai'i 217, 221, 941 P.2d 300, 304 (1997), in a footnote, and asserts that this "court may look to subsequent amendments of a statute to aid in the interpretation of a prior statute." However, *Keliipuleole* does not support Appellant's assertion. Moreover, in light of the discussion *infra* based on the plain language of HRS § 514A–82, as well as its legislative history, it is unnecessary to address Appellant's assertion.

For the same reasons as pertaining to argument (vi), it is unnecessary to address Appellant's argument (vii) regarding "absurd results."

**13.** HRS § 514A–20 entitled "Condominium property regimes," states,

> Whenever the sole owner or all of the owners including all of the lessees of a property expressly declare, through the execution and recordation of a master deed, together with a declaration, which declaration shall set forth the particulars enumerated by section 514A–11, the sole owner's or their desire to submit the property to the regime established by this chapter, there shall thereby be established a condominium property regime with respect to the property, and this chapter shall be applica-

[ (1993).[14]]" Further, "[i]n drafting the bylaws for a project, the developer's attorney must review the section of the law that details what provisions must be written into the project's bylaws (i.e., HRS § 514A–82)." Then, "[t]he developer's attorney writes into the project's bylaws every provision that HRS § 514A–82 requires to be included in the bylaws, as set forth at that specific time." Appellees state that "[a]t that point, the provisions of the project documents, including the bylaws, are fixed, and once they are recorded, they are covenants running with the land that are agreed to by every member of the condominium association upon the purchase of their respective units."

If it were said that HRS § 514A–82(a)(14) applied to the Association, even though the Association was created on September 9, 1968, prior to the enactment of HRS § 514A–82(a)(14), such an application would "impose[ ] a new duty or attach[ ] a new disability in respect to transactions or considerations already past[.]" *Graham*, 63 Haw. at 545, 632 P.2d at 652 (internal quotation marks and citations omitted). Thus, the statute would be given retrospective effect. *See id.*

## VI.

■ But it is well settled that "all statutes are to be construed as having only a prospective operation unless the purpose and intention of the legislature to give them a retrospective effect is expressly declared or is necessarily implied from the language used." *Robinson v. Bailey*, 28 Haw. 462, 464 (1925) (internal quotation marks and citation omitted); *see also In re Medeiros Testamentary Trust & Life Ins. Trust*, 105 Hawai'i 284, 293,

96 P.3d 1098, 1107 (2004) ("The common law rule disfavors retroactive application of laws. This rule is codified in HRS § 1–3 (1993), which provides that '[n]o law has any retrospective operation, unless otherwise expressed or obviously intended.' " (Citation omitted.)); *Graham*, 63 Haw. at 546, 632 P.2d at 653 ("No law has any retrospective operation, unless otherwise expressed or obviously intended." (Citations omitted.)).

■ Former HRS § 514–20(15) and HRS § 514A–82(a)(14), on their face, do not "expressly declare[ ]" or "necessarily impl[y]" a retrospective operation. *Robinson*, 28 Haw. at 464. Moreover, the legislative history of HRS § 514–20(15) and HRS § 514A–82(a)(14) does not "expressly declare[ ]" or "necessarily impl[y]" a retrospective operation. *Robinson*, 28 Haw. at 467. The parties do not dispute that HRS § 514A–82(a) applies "prospectively." Thus, HRS § 514A–82(a) is "[e]ffective or operative in the future[,]" *Black's Law Dictionary* at 1259, namely from June 9, 1976, the date on which the statute was originally enacted under the former HRS § 514–20. 1976 Haw. Sess. L. Act 239, § 3 at 758–59; *see also Yamaguchi v. Queen's Med. Ctr.*, 65 Haw. 84, 89, 648 P.2d 689, 693 (1982) (concluding that "the statute be given prospective effect only, as there exists no indication in either the statutory language or the accompanying committee reports that the legislature intended a different result" (citation omitted)). Accordingly, because the Association was created and its bylaws recorded prior to the enactment of the former HRS § 514–20, the bylaw requirements of HRS § 514A–82(a) cannot be said to apply to the Association.[15] Thus,

---

ble to the property. If the master deed is already recorded, the recordation of the declaration is sufficient to achieve the same result.

14. HRS § 514A–81 entitled "Bylaws," stated, "The operation of the property shall be governed by bylaws, a true copy of which shall be recorded in the same manner as the declaration. No amendment to the bylaws is valid unless the amendment is duly recorded." HRS § 514A–81 was repealed by 2004 Haw. Sess. L. Act 164, § 26 at 813. Bylaws of condominiums are now governed by HRS § 514B–108 (2006).

15. Contrastingly, HRS § 514A–82(b), enacted on June 24, 1987, 1987 Haw. Sess. L. Act 277, §§ 2,

5 at 843–47, is to be applied "retrospectively." The final sentence of HRS § 514A–82(b) provides that "[t]he provisions of this subsection *shall* be deemed incorporated into the bylaws of *all condominium projects existing as of January 1, 1988,* and all condominium projects created after that date." (Emphasis added.) "Shall," as used in HRS § 514A–82(b), is usually construed as "must." *Leslie v. Bd. of Appeals of the County of Hawai'i,* 109 Hawai'i 384, 393, 126 P.3d 1071, 1080 (2006) ("As used in statutes, contracts, or the like, this word ['shall'] is generally imperative or mandatory." (Citation omitted.)). Hence, by using the term "shall," the legislature mandated that the provisions of "this subsection[,]" HRS

Appellant's argument as to (1)(a) must be rejected.

## VII.

■ As to Appellant's argument (1)(b),[16] as indicated previously, HRS § 514A–82.2(b) stated in relevant part,

An association of apartment owners may at any time restate ... the bylaws of the association *to amend the ... bylaws as may be required in order to conform* with the provisions of this chapter or of any other statute ... *by a resolution* adopted by the board of directors, *and the restated ... bylaws shall be as fully effective* for all purposes as if adopted by the vote or written consent of the apartment owners; *provided that any ... bylaws restated* pursuant to this subsection *shall identify each portion so restated and* shall *contain a statement that those portions have been restated solely for the purposes of information and convenience, identifying the statute ... implemented by the amendment, and that in the event of any conflict, the restated ... bylaws shall be subordinate to the cited statute ....*

(Emphases added.) Pursuant to the plain language of HRS § 514A–82.2(b), an association's bylaws may be restated "to amend the ... bylaws as may be required in order to conform with the provisions of [HRS chapter 514A]."

However, as discussed *supra*, HRS § 514A–82(a)(14) does not apply to the Asso-

ciation. For if it did, the provision would have retrospective effect, despite not "expressly declar[ing]" or "necessarily impl[ying]" a retrospective operation. *Robinson*, 28 Haw. at 467. Therefore, the addition of Section 3.01 of the First Restated Bylaws which prohibited a resident manager from serving on the Board was not "required in order to conform with the provisions of [HRS chapter 514A]." HRS § 514A–82.2(b). The addition of Section 3.01 in the First Restated Bylaws exceeded the purview of the plain language of HRS § 514A–82.2(b) and, thus, cannot be deemed to be included in the restatement. *See Kepo'o*, 106 Hawai'i at 285, 103 P.3d at 954. Accordingly, Appellant's argument as to (1)(b) must be rejected.

## VIII.

As to issue (2), Appellant essentially argues that the fiduciary duty that the Board owed to the members of the Association under HRS § 514A–82.4 (1993) [17] is "the same fiduciary duty ... imposed on an agent towards his principal" and, thus, the Board was obligated to make "full, fair, complete and timely disclosure of all relevant and material facts." Appellant argues that the following "material facts," viewed in the light most favorable to Appellant, demonstrate the Board's breach of fiduciary duty:

[The Board failed] to [ (a) ] *include an explanation as to the true nature of the controversy,* [ (b) ] *disclose clearly, the ex-*

---

§ 514A–82(b), are "deemed incorporated into the bylaws of all condominiums existing as of January 1, 1988[.]" By virtue of this command, the statute unequivocally instructs that HRS § 514A–82(b) apply retrospectively and "extend[ ] in scope or effect to matters that have occurred in the past." *Black's Law Dictionary* at 1343. In this regard, because "[t]he statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning." *Kepo'o v. Kane*, 106 Hawai'i 270, 285, 103 P.3d 939, 954 (2005) (internal quotation marks and citation omitted).

16. As to Appellant's argument (1)(b), Appellant asserts that the prohibition against resident managers from sitting on the Board in the First Restated Bylaws "was but a mere formality" and that the prohibition had been in effect since June 9, 1976.

17. HRS § 514A–82.4, entitled "Duty of directors," stated, *Each director shall owe the association* of apartment owners *a fiduciary duty* in the performance of the director's responsibilities. (Emphases added.) It should be noted that HRS § 514A–82.4 was repealed by 2004 Haw. Sess. L. Act 164, § 26 at 813.

As of July 1, 2005, HRS § 514B–106(a) entitled "Board; powers and duties," contains the same term, "fiduciary duty," and states,

Except as provided in the declaration, the bylaws, subsection (b), or other provisions of this chapter, the board may act in all instances on behalf of the association. In the performance of their duties, officers and members of the board shall owe the association a *fiduciary duty* and exercise the degree of care and loyalty required of an officer or director of a corporation organized under chapter 414D.

(Emphasis added.)

*act language of the provisions in contro- versy,* [ (c) ] *disclose the rationale for each provision in controversy,* [ (d) ] *inform members* of the [B]oard's position on the matter, namely *that they were against adoption of the provisions in controversy as they were in violation at the time of HRS § 514A–82(a)(14)* ..., [ (e) ] *warn members that the [B]oard intended to use any proxies granted to them* by members for the upcoming meeting, *to vote down* any attempts at *ratification of the bylaws* in order to end the controversy and, [ (f) ] *inform members that failure to ratify the bylaws could mean the [A]ssociation would have to bring this controversy into the courts,* and [ (g) ] *disclose the conflicts of interest that the president held in the matter and possibly held by other board members.*

(Emphases added.)

## IX.

 "It is a well established rule both in Hawai'i and in a majority of the States that the relation of directors to the corpora- tions they represent is a fiduciary one." *Ha- waiian Int'l Fins. v. Pablo,* 53 Haw. 149, 153, 488 P.2d 1172, 1175 (1971) (citations omitted). Further, "[a] corporate officer is an agent for his corporate principal." *Williams v. Queen Fisheries,* 2 Wash.App. 691, 469 P.2d 583, 585 (1970). Inasmuch as a condominium's board of directors is similar to a corpora- tion's board of directors, a condominium board member is also an agent for his condo- minium principal (*i.e.,* the membership of the association). *See Courts at Beachgate v. Bird,* 226 N.J.Super. 631, 545 A.2d 243, 248 (Ch. Div.1988) (discussing "the modern cor- porate entity known as the condominium" (citation omitted)).

In this regard, Appellant asserts that "full, fair, complete and timely disclosure of all relevant and material facts is necessary for an agent ... to meet his [or her] duty," and quotes the following:

Hawai'i courts recognize that "[a]n agent's fiduciary duty which carries with it the duty of *full, fair, complete, and timely disclosure of material facts,* is among the most important obligations in our legal system." *Han v. Yang,* 84 Hawai'i 162, 173, 931 P.2d 604 (App.1997) (emphasis added).... As explained by the Hawai'i Supreme Court, "an agent is subject to a duty to use reasonable efforts to give his principal information which is relevant to affairs entrusted to him and which, as the agent has notice, the principal would desire to have." *Property House, Inc. v. Kelley,* 68 Haw. 371, 377, 715 P.2d 805 (1986).

(Quoting *Matsuda v. Wada,* 101 F.Supp.2d 1315, 1324 (D.Haw.1999) (emphasis added)).

"Material fact," in the context of fiduciary duties, is not defined by either party. In general, a "material fact" is defined as "[a] fact that is significant or essential to the issue or matter at hand." *Black's Law Dic- tionary* at 629. In this regard, as to pur- ported material fact (a), disclosure of the "true nature of the controversy" (*i.e.,* the issue itself) is apparently "significant or es- sential to the issue or matter at hand." *Id.* However, the Board's October 3, 2002 letter to the membership, on its face, included an explanation of the controversy. Fact (a), therefore, is not a material fact genuinely in issue for purposes of summary judgment. *See Bremer,* 104 Hawai'i at 51, 85 P.3d at 158.

With regard to facts (b) and (c), HRS § 514A–82(b)(2)(B) stated in pertinent part, that "[t]he proposed bylaws, rationale, and ballots for voting on any proposed bylaw shall be mailed by the board of directors to the owners ... for vote or written consent without change[.]" Contrary to Appellant's argument, (b) is not a genuine issue, *see Bremer,* 104 Hawai'i at 51, 85 P.3d at 158, because the membership was directed to the language of the provisions in controversy, as indicated by the Board's October 3, 2002 letter, stating, "You should already [sic] cop- ies of the restated bylaws[.]" Similarly, (c) is not a genuine issue, *see id.,* because the membership was also provided the rationale behind the vote within the same October 3, 2002 letter, which stated, "Several apartment owners have asked that the owners be al- lowed to vote at the upcoming annual meet- ing to approve the restated bylaws. The board has agreed to that request and author-

ized this letter to provide some background on the request."

With regard to purported factual issues (d), (e) and (f), Appellant fails to cite to any evidence in the record, any case law, or any statute to support his claims, nor to establish how his allegations would amount to "material facts" requiring disclosure. In that regard, "[t]his court is not obligated to sift through the voluminous record to verify an appellant's inadequately documented contentions." *Lanai Co. v. Land Use Comm'n,* 105 Hawai'i 296, 309 n. 31, 97 P.3d 372, 385 n. 31 (2004) (citations omitted). Accordingly, Appellant fails to demonstrate that genuine issues of material fact exist with respect to purported material facts (d), (e), and (f). *See Bremer,* 104 Hawai'i at 51, 85 P.3d at 158.

## X.

Finally, with regard to item (g), HRS § 514A–82(b)(5) (Supp.2005) stated,

A director who has a conflict of interest on any issue before the board *shall disclose the nature of the conflict of interest prior to a vote on that issue* at the board meeting, and the *minutes of the meeting shall record the fact that a disclosure was made*[.]

(Emphases added.) The phrase "conflict of interest" was not defined in the statutes in existence at the time of the October 15, 2002 Annual Meeting. However, the phrase is defined as "[a] real or seeming incompatibility between one's private interests and one's ... fiduciary duties." *Black's Law Dictionary* at 319.[18] Appellant argues King "[p]ersonally benefitted from his dual roles as a compensated resident manager and a board member."

Although HRS § 514A–82(b)(5) refers to a "board meeting," the Board should have disclosed King's potential conflict of interest to the membership prior to the membership's vote on the issue. As Appellant argues, the Board's October 3, 2002 letter to the membership did not do this, and the minutes of

the October 15, 2002 Annual Meeting failed to "record the fact that a disclosure was made."

## XI.

■ But in connection with purported material facts (a)-(g), Appellees contend that regardless of any alleged breach of fiduciary duty by the Board, "[t]he issue is now moot [because o]ver three years have passed and three elections for the Board have been held since the 2002 annual meeting of the Association[.]" The court did not render a decision as to Appellees' mootness argument.

Appellees cite *Adams v. Meyers,* 250 Ill. App.3d 477, 190 Ill.Dec. 37, 620 N.E.2d 1298 (1993), to argue that "[c]hallenges to a private association's election are generally mooted by the occurrence of subsequent elections." In *Adams,* the Appellate Court of Illinois noted that the plaintiffs did not disagree with the general principle that "challenges to a private association's election are mooted by occurrence of subsequent elections[,]" but argued that "the 'public interest exception' to the mootness doctrine should allow them to pursue their claim." *Id.* at 44–45, 620 N.E.2d at 1305–06 (citing *Kohan v. Rimland Sch. for Autistic Children,* 102 Ill. App.3d 524, 58 Ill.Dec. 197, 430 N.E.2d 139, 141–42 (1981) ("Since the 1981 election has already taken place, it has ineluctably rendered moot the 1980 controversy, which is the only election involved in this appeal." (Citations omitted.))).

This court has said,

It is established in Hawai'i that a case is moot where the question to be determined is abstract and does not rest on existing facts or rights. Thus, the mootness doctrine is properly invoked where events have so affected the relations between the parties that the two conditions for justiciability relevant on appeal—adverse interest and effective remedy—have been compromised.

---

**18.** It should be noted that HRS § 514B–125(f) (2006), entitled "Board meetings" states in relevant part,

"Conflict of interest", as used in this subsection, means an issue in which a director has a direct personal or pecuniary interest not common to other members of the association.

This definition is consistent with the general definition found in Black's Law Dictionary quoted above.

*Okada Trucking Co. v. Bd. of Water Supply,* 99 Hawai'i 191, 195–96, 53 P.3d 799, 803–04 (2002) (brackets, internal quotation marks, ellipses, and citations omitted). Applying the foregoing in the instant case, subsequent events have "so affected the relations between the parties" that there is no longer an effective remedy for Appellant's claims.[19] *Id.* (internal quotation marks and citations omitted). By the time Appellant filed his complaint on March 3, 2004, almost one-and-a-half years after the October 15, 2002 Annual Meeting, the next annual meeting had taken place, King was no longer board president, and Clairmont had left the Board and the Association. Also, within a week of Appellant's complaint, the Second Restated Bylaws were recorded, and within a month, a new resident manager had been hired to replace King. For the foregoing reasons, Appellant's request for a "declaratory ruling stating that the individual [Appellees] of the Board failed to meet their fiduciary duties" with regard to the October 15, 2002 Annual Meeting is no longer an "effective remedy."[20] *Id.* (internal quotations marks and citations omitted).

However, this court has said that "an exception to the mootness doctrine [exists] in cases involving questions that affect the public interest and are 'capable of repetition yet evading review.'" *Id.* at 196, 53 P.3d at 804 (citations omitted). Here, Appellant's second issue on appeal does not fall under the exception. *See id.* As to the public interest, first, the matter is apparently private in nature inasmuch as it concerns a dispute within a private condominium association. Second, it is not necessary in this case to decide Appellees' alleged breach of fiduciary duty for the guidance of future public officers. Inasmuch

as the question of a breach is based on factual circumstances particular to every controversy, a determination in this case would likely provide only limited guidance to public officials in the future. Finally, any perceived ambiguity in HRS § 514A–82.4 is remedied by HRS § 514B–106 (2006),[21] which clearly delineates what a condominium board's fiduciary duty entails. Accordingly, Appellant's breach of fiduciary duty claim is moot.

## XII.

As to issue (3), Appellant contends that "[v]iewing the [August 8, 2002 'Statement of Irvin King'] letter sent by [King] in his re-election bid to the board in the light most favorable to [Appellant,] ... [King] solicited proxies in violation of HRS § 514A–82(b)(4)." HRS § 514A–82 does not define "proxy" or "solicitation," however, a "proxy solicitation" is generally defined as "[a] request that a corporate shareholder authorize another person to cast the shareholder's vote at a corporate meeting." *Black's Law Dictionary* at 1263.

On its face, King's statement does not explicitly solicit proxies. However, Appellant asserts that "[a] communication to shareholders may constitute a proxy solicitation, *even if it does not contain an express request for a proxy, if it is part of a continuous plan intended to end in solicitation* and to prepare the way for success." (Quoting *Shamrock Holdings, Inc. v. Polaroid Corp.,* 709 F.Supp. 1311, 1327 (D.Del.1989) (internal quotation marks and citations omitted) (emphases added)). According to Appellant, "the purpose of the communication and the circumstances present, [also] need to be tak-

---

**19.** In his Reply Brief, Appellant raises the following argument in response to Appellees' mootness argument:

> Upon prevailing, [Appellant] in part will seek fines, regular and punitive damages, and an order removing [individual Appellees] from office and barring their participation from board activities for a specified period of time.

> However, insofar as Appellant's statement concerns procedural measures he intends to take upon the determination and completion of the instant case, it is not a part of this appeal. Accordingly, whether the preceding statement amounts to an "effective remedy" need not be addressed. *See Okada,* 99 Hawai'i at 195–96, 53

P.3d at 803–04 (internal quotation marks and citations omitted).

**20.** Inasmuch as there is no effective remedy, the other factors need not be addressed.

**21.** HRS § 514B–106(a) (2006) entitled "Board; powers and duties," states in relevant part,

> In the performance of their duties, officers and members of *the board shall owe the association a fiduciary duty and exercise the degree of care and loyalty required of an officer or director of a corporation* organized under chapter 414D. (Emphasis added.)

en into account in determining if a solicitation occurred[.]" In this regard, Appellant maintains that King submitted his statement specifically because he intended to solicit proxies in compliance with HRS § 514A–82(b)(4)(B).[22]

As indicated *supra*, however, Appellees argue that "[r]egardless ... of any alleged solicitation of proxies by ... King in 2002, the issue is now moot [because o]ver three years have passed and three elections for the Board have been held since the 2002 annual meeting of the Association[.]" For the reasons stated *supra*, Appellant's contention as to issue (3) is also moot.

## XIII.

As to issue (4), Appellant contends that the Second Restated Bylaws are "premature and defective" inasmuch as the Second Restated Bylaws (a) "were not previously adopted by a majority of board members present at a duly called meeting of the board, as is required of all association actions, and HRS § 514A–82.2(b),"[23] (b) was "signed by the president/resident manager, who held an undisclosed conflict of interest" because "[h]e stood to personally benefit because the altered bylaws stripped the provision banning him as the resident manager from sitting on the board,"[24] and (c) "did not comply with HRS § 514A–82.2(b), which requires that any changes to bylaws pursuant to the board acting alone and without prior association approval, must include within the bylaws, the legal authority for the changes made to the bylaws."[25]

■ With regard to argument (4)(a), Appellant's contention that the Board had not previously adopted the Second Restated Bylaws prior to recordation at the Bureau is not properly preserved for review by this court, insofar as it is advanced for the first time on appeal. *See State v. Moses*, 102 Hawai'i 449, 456, 77 P.3d 940, 947 (2003) ("As a general rule, if a party does not raise an argument at

trial, that argument will be deemed to have been waived on appeal; this rule applies in both criminal and civil cases." (Citations omitted.)). Moreover, Appellant's allegation is not supported by reference to the record. Accordingly, Appellant's argument (4)(a) is waived. *See Tauese v. State, Dept. of Labor & Indus. Relations*, 113 Hawai'i 1, 26, 147 P.3d 785, 810 (2006) (stating that "[t]his court may 'disregard [a] particular contention' if an appellant 'makes no discernable argument in support of that position' " (quoting *Norton v. Admin. Dir. of the Court*, 80 Hawai'i 197, 200, 908 P.2d 545, 548 (1995) (citations omitted)) (brackets in original)).

■ As to argument (4)(b), Appellant asserts that King "stood to personally benefit because the altered bylaws stripped the provision banning him as the resident manager, from sitting on the board of directors." Appellant does not cite any authority, statutes, or parts of the record to support his argument. Thus, Appellant's argument as to (4)(b) is waived. *See id.* Moreover, as previously discussed, the provision restricting a resident manager from serving on the Board was included in the Association's First Restated Bylaws, but should not have been included pursuant to HRS § 514A–82.2. *See supra.*

Lastly, with regard to argument (4)(c), HRS § 514A–82.2(b), to reiterate, stated in pertinent part,

[A]ny declaration of condominium property regime or bylaws restated pursuant to this subsection *shall identify each portion so restated and shall contain a statement that those portions have been restated solely for purposes of information and convenience, identifying the statute, ordinance, rule, or regulation implemented by the amendment,* and that in the event of any conflict, the restated declaration or bylaws shall be subordinate to the cited statute, ordinance, rule, or regulation.

(Emphasis added.) Contrary to Appellant's claim, the Second Restated Bylaws' endnotes

---

22. *See supra* note 4.

23. This reflects Appellant's entire argument as to (4)(a).

24. This reflects Appellant's entire argument as to (4)(b).

25. This reflects Appellant's entire argument as to (4)(c).

"identify each portion so restated" as well as "identif[y] the statute ... implemented by the amendment" (*e.g.,* "(4) This Section 3.05 was amended to comply with Section 514A–82(b)(1), Hawai'i Revised Statutes, as amended"). HRS § 514A–82.2(b). For the foregoing reasons, Appellant's argument with respect to issue (4) fails to demonstrate a genuine issue of material fact exists that the Second Restated Bylaws are defective. *See Bremer,* 104 Hawai'i at 51, 85 P.3d at 158.

## XIV.

Accordingly, the August 24, 2005 judgment of the court is affirmed.