ALVAREZ FAMILY TRUST; SERGIO S. ALVAREZ AND MARGARET J. ALVAREZ, Plaintiff-Appellant,
v.
ASSOCIATION OF APARTMENT OWNERS OF THE KAANAPALI ALII; JOHN DOES 1-100; JANE DOES 1-100; DOE PARTNERSHIPS 1-100; DOE CORPORATIONS 1-100 AND DOE ENTITIES 1-100, Defendants-Appellees
No. 27695
Intermediate Court of Appeals of Hawaii
November 21, 2008.
On the briefs:
Terrance M. Revere and Rebecca A. Szucs, (Motooka Yamamoto & Revere), for Plaintiffs-Appellants.
Matt A. Tsukazaki (Torkildson, Katz, Fonseca, Moore & Hetherington) for Defendant-Appellee.

SUMMARY DISPOSITION ORDER

NOT FOR PUBLICATION
WATANABE, Presiding Judge, NAKAMURA and FUJISE, JJ.
Plaintiffs-Appellants the Alvarez Family Trust, Sergio S. Alvarez and Margaret J. Alvarez (Alvarez family) appeal from the Final Judgment of the Circuit Court of the Second Circuit (circuit court)[1] entered on December 14, 2005, in favor of Defendant-Appellee Association of Apartment Owners of Kaanapali Alii (Association).
On appeal, the Alvarez family argues that the circuit court erred in granting summary judgment in favor of the Association because (1) there was no valid vote for the Pricing Policy for the sale of the sixty-eight remaining fee-simple interests of the leasehold units of the Kaanapali Alii condominium (leased-fee interests) purchased by the Association's Board of Directors (Board), and (2) the Board was not authorized to set prices for the leased-free interests so as to make a profit. The Alvarez family also argues that the circuit court abused its discretion in awarding attorneys' fees and costs to the Association.
After a careful review of the record, applicable authority, the issues raised and the arguments presented by the parties, we resolve the Alvarez family's points as follows:
1. The Board validly adopted the Pricing Policy. Director Robert Gordon (Gordon) did not have a conflict of interest when he voted in favor of the Pricing Policy. The By-Laws of the Association prohibit voting by a director with a conflict of interest. A "'[c]onflict of interest' . . . means an issue in which a director has a direct personal or pecuniary interest not common to other members of the association." Hawaii Revised Statutes (HRS) § 514B-125 (2006).[2] Gordon's conflict of interest arose only insofar as he was involved with the entity that offered to purchase the leased-free interests from the condominium's developer, thus triggering the Association's right of first refusal. Once the Association and the Board voted, with Gordon recused, to exercise that right to purchase the leased-fee interests, Gordon's interest in that entity was no longer in conflict with the Association's interests. Thus, Gordon properly participated in the later, pricing-policy vote.
The Board, which consists of seven directors, approved the Pricing Policy by majority vote. The By-Laws require Board action to be approved by a majority of directors present at a meeting with quorum. HRS § 514A-82(16) (Supp. 2003)[3] required that board meetings conform to Robert's Rules of Order. Robert's Rules of Order 387 (10th ed. 2000) excludes "blanks or abstensions" when calculating a majority. Because two directors "abstained," their votes were correctly not counted in tallying the vote of three in favor and two against the Pricing Policy. Thus, the Pricing Policy passed by proper majority.
2. Neither the Association's By-Laws nor HRS Chapter 514C prevent making a profit on the purchase of the fee interests. The Alvarez family contends that the Pricing Policy was adopted by the Board in violation of Article IV, Section 10(O) of the By-Laws which provides: "Nothing herein contained shall be construed to give the Board . . . authority to conduct an active business for profit on behalf of the owners or any of them, or the Association." However, the record shows that the purchase of the leased-free interests was a single transaction, albeit of indeterminate duration, and not a business. Moreover, it appears from the record that the Pricing Policy was established to ensure that the Board would be able to pay off the $6,200,000 loan it took out to acquire the remaining sixty-eight leased-fee interests on behalf of the leasehold owners and not to make a profit on the purchase.
The Pricing Policy was not prohibited under Part I of HRS Chapter 514C[4] and particularly HRS § 514C-6 (2006). The statute provides for the "fair and equitable" assessment of expenses in a fee purchase transaction but does not address the possibility of making a profit. Thus, the plain language of the statute does not prohibit the Board from pricing the resale of the fee interests to realize a profit.
The legislative history behind the enactment of Chapter 514C is not to the contrary. Although the legislature was certainly concerned about the ability of lessees to acquire the fee interest in their condominium unit at an affordable price, the debate over the original statute and its various amendments did not include a discussion about whether the condominium associations could realize a profit from the transaction.[5] Thus, the legislative history is consistent with the plain language of Chapter 514C insofar as Chapter 514C does not address this profit question.
The Pricing Policy was also not prohibited by the Hawaii Nonprofit Corporations Act. HRS § 414D-19 (2004) regulates how a profit may be used by a non-profit corporation and does not prevent the realization of profit. To the extent the Association intended to use any profits to defray operating expenses, and thus reduce the maintenance fee payments that all owners of the Association would have to make, this "benefit" would not be prohibited by HRS 414D-19.
Finally, the Board did not violate any common law duties owed to the remaining lessees. The Hawai`i Supreme Court has analogized a condominium board member to a corporate officer. Taniguchi v. Ass'n of Apartment Owners of King Manor, Inc., 114 Hawai`i 37, 50, 155 P.3d 1138, 1151 (2007). The corporate director's duties to the corporation include a full range of fiduciary duties. Lussier v. Mau-Van Dev. Inc., 4 Haw. App. 359, 381, 667 P.2d 804, 819-20 (1983). The Alvarez family does not explain how the existence of a profit would per se establish a violation of any duty in tort or as a fiduciary owed to the owners. The record shows that the Board was fully advised by legal counsel when formulating the Pricing Policy and had disclosed the potential for profit to the owners prior to their vote to authorize the purchase of the leased-fee interests and obtained the opinion of a real estate expert who determined that the Pricing Policy was reasonable. Thus, the record does not show that the Board violated any fiduciary duties.
3. The circuit court did not abuse its discretion in awarding attorney's fees and costs to the Association. HRS § 514A-94(b) (1993)[6] authorizes attorney's fees and costs to an association when an owner's action to enforce any provision of the declaration or bylaws against an association is not substantiated. Here, the Alvarez family expressly relied upon the By-Laws in seeking declaratory relief that would mandate the sale of their leased-fee interest to them "at cost." This claim was not sustained. Therefore, HRS § 514A-92(b) authorized the award of attorneys' fees to the Association.
The amount of the award of attorneys' fees is reviewed under an abuse of discretion standard. Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai`i 92, 105, 176 P.3d 91, 104 (2008). In contrast to the situation in Sharp v. Hui Wahine, Inc., 49 Haw. 241, 413 P.2d 242 (1966), the record in this case shows that the Alvarez family filed the instant lawsuit after receiving notice that summary judgment had been entered in a similar case and that the Association intended to seek attorneys' fees if the Alvarez family persisted in the instant suit. On this record, it cannot be said that the award of attorney's fees was an abuse of discretion.
Therefore,
The Circuit Court of the Second Circuit's December 14, 2005, Final Judgment is affirmed.
NOTES
[1] The Honorable Joseph E. Cardoza presided.
[2] HRS § 514A-82 was repealed effective July 1, 2005 and has been reenacted as HRS § 514B-125 (2006).
[3] See previous note.
[4] The circuit court ruled that Chapter 514C Part II, which regulates voluntary sales, did not apply in this case. The Alvarez family argues in their Reply Brief that "this was clearly a voluntary sale under Part II of the statute" because it was impossible for the requisite number of lessees to approve the exercise of a right of first refusal. However, the Alvarez family did not argue this below and did not designate the circuit court's conclusion in their points on appeal. Consequently, the Alvarez family has waived this argument. Hawai`i Rules of Appellate Procedure Rule 28(b)(4). Thus we confine our discussion to Part I of Chapter 514C.
[5] It is true that the legislature expressed their intent that what became Act 298 (1988) would "protect the rights of both the fee owners and the lessees, and subsequently, deter speculators from purchasing the fee interest . . . and resell[ing] to the lessees at a profit." Standing Committee Report No. 1061-88, reprinted in 1988 House Journal at 1218. We infer from this expression of intent that the legislature was concerned with unreasonable or unfair profits, and not that fee owners would be prevented from realizing a profit at all. Thus, the legislative history does not support the conclusion that the legislature sought to prevent any profit from being realized in the sale of the fee interests.
[6] HRS Chapter 514A part V, which included HRS § 514A-94, was repealed by Act 164 (2004) effective July 1, 2005. The complaint in this case was filed in this case on January 11, 2005.