2007-NMCA-101

165 P.3d 1135

**Patricia GINGRICH, Plaintiff–Appellee,**

v.

**SANDIA CORPORATION, Lockheed Martin Corporation, C. Paul Robinson, and John Does 1–5, Defendants–Appellants.**

Nos. 25,955, 25,956.

Court of Appeals of New Mexico.

June 15, 2007.

Certiorari Denied, July 30, 2007.

Freedman Boyd Daniels Hollander & Goldberg, P.A., John W. Boyd, Martha E. Mulvany, Albuquerque, NM, for Appellee.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Charles A. Armgardt, Albuquerque, NM, for Appellants.

Rodey, Dickason, Sloan, Akin & Robb, P.A., Charles K. Purcell, Albuquerque, NM, for Non–Party Appellant Norman Bay.

## OPINION

ALARID, Judge.

{1} Defendants–Appellants Sandia Corporation, Lockheed Martin Corporation, and C. Paul Robinson (collectively, Sandia) and Non–Party attorney Norman Bay (Bay) filed interlocutory appeals from an order of the district court compelling production of materials for which the Appellants have asserted attorney-client privilege and work product immunity. The district court ordered various materials produced after finding that Sandia, in defense of a suit brought by Plaintiff–Appellee Patricia Gingrich, had waived the attorney-client privilege with respect to an investigative report produced by Bay and relied upon by Sandia to defend this case. In that order compelling discovery, the district court certified the issues raised therein for appeal after making the requisite findings. *See* NMSA 1978, § 39–3–4(A) (1999)

(permitting appellate review of an interlocutory district court order where the order "does not practically dispose of the merits of the action," and the district court believes that the order "involves a controlling question of law as to which there is a substantial ground for difference of opinion," and that "an immediate appeal from this order [or decision] may materially advance the ultimate termination of the litigation"). Sandia and Bay filed separate interlocutory appeals in this Court, which we granted and consolidated. The district court has stayed all further proceedings pending the resolution of this appeal. Requests for oral argument are hereby denied. For the reasons stated herein, we affirm the order of the district court, except to the extent that it required production of that portion of Bay's work product that was not communicated to Sandia.

## FACTS AND PROCEDURAL BACKGROUND

{2} The facts relevant to this appeal are not in dispute. Bay was retained by Sandia to investigate allegations by two internal Sandia Ethics Office investigators who claimed that their work was being impeded and that they were being retaliated against by Sandia managers as a result of their investigations. Sandia was notified of the investigators' allegations by way of a letter sent to Sandia management by a local attorney, captioned "Re: Employment discrimination—Pat O'Neill and Mark Ludwig." The letter relayed several of the investigators' accusations, including that Sandia managers had interfered with their investigative efforts, that they had suffered retaliatory adverse employment actions, and that they had been subjected to "potentially slanderous statements and libelous writings" and a "hostile work environment." The letter requested that Sandia "reverse certain improperly motivated management initiatives against these two investigators." In closing, the letter also encouraged Sandia to "avoid a serious legal mistake" by taking steps to ensure that the investigators were being treated lawfully.

{3} After receiving this letter, and after realizing that any such investigation would normally have been conducted by the inves-

tigators themselves, Sandia retained Bay, a former federal attorney and currently a professor of law at the University of New Mexico, to conduct an investigation into the investigators' accusations. The letter memorializing Bay's engagement, sent by Lawrence Greher, Senior Attorney for Sandia, instructed Bay to conduct an inquiry into the investigators' allegations that they were:

(1) being prevented from fully and faithfully carrying out their assigned duties as security investigators and (2) being retaliated against because of their past or ongoing efforts to ferret out possible fraud, waste [or] abuse at Sandia.

{4} Sandia further instructed Bay to conduct a "complete, thorough, and comprehensive investigation into the allegations," to treat his investigation as "attorney-client privileged to the fullest extent possible," and to submit a "comprehensive report on [his] findings to C. Paul Robinson, Sandia's President and Laboratory Director." In addition to submitting a written report containing the results of his investigation, Bay was directed to "advise [Sandia's in-house counsel] from time to time concerning, in general terms, the progress being made in completing [his] investigation."

{5} Bay began his investigation in August 2002, culminating in the submission of a 221–page "Report of Independent Investigation" (the Report) to Robinson in June 2003. Plaintiff was one of several Sandia employees whose conduct, according to the Report, "merited scrutiny." Plaintiff was disciplined later that month, and approximately one year later, she terminated her employment with Sandia. Plaintiff subsequently filed a complaint in district court challenging the disciplinary actions taken by Sandia, and alleging that the Report contained false allegations of wrongdoing by Plaintiff. Specifically, and more germane to this appeal, Plaintiff alleged that Sandia managers knew that the Report's conclusions which criticized Plaintiff's conduct were incorrect, but nevertheless chose to discipline her in order to placate members of Congress responsible for oversight of the laboratory. Sandia's response denied Plaintiff's allegations that the Report was a sham, and more particularly, stated

that the Report provided an objective, reasonable belief that any action taken against Plaintiff was justified.

{6} The district court found that waiver of both the attorney-client privilege and work product immunity had occurred as a result of Sandia's disclosure of the Report prior to and during this litigation, and by Sandia's direct use of the Report in defending against Plaintiff's claim that she was demoted, and constructively discharged, without cause. In determining the scope of the waiver resulting from Sandia's disclosure and use of the Report, the district court ordered that the following additional materials be disclosed as well: (1) communications between Bay, Sandia lawyers, and Sandia representatives regarding Plaintiff and the Report; (2) work product materials prepared by Sandia's in-house counsel and communicated to non-legal representatives of Sandia; and (3) all materials prepared or compiled by Bay relating to the Report.

{7} Sandia and Bay request that we reverse the district court's order and uphold Sandia's assertions of attorney-client privilege and work product immunity. For the reasons stated herein, we affirm the district court's order with respect to Sandia's in-house communications and work product, but reverse insofar as it compels Bay to produce attorney work product materials that were not communicated to Sandia.

## APPLICABILITY OF ATTORNEY–CLIENT PRIVILEGE AND WORK PRODUCT IMMUNITY

■ {8} We first address Plaintiff's contention that the district court erroneously concluded that the Report, prior to its disclosure and use in this litigation, was protected by the attorney-client privilege and that Bay's investigation was entitled to work product immunity. Plaintiff advances this argument as an alternative ground for affirmance, and takes the position that if the aforementioned protections do not apply to Bay's work and investigation, then the district court was correct to order their production. We review decisions regarding the initial applicability of the attorney-client privilege and work product immunity for abuse of discretion. *See Hartman v. Texaco*

*Inc.,* 1997–NMCA–032, ¶ 20, 123 N.M. 220, 937 P.2d 979.

{9} The rule guiding application of work product immunity in New Mexico is Rule 1–026(B)(4) NMRA, which provides that the immunity extends to "documents and tangible things ... prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer or agent)." The district court found that "Norman Bay was retained to perform and did perform legal services for Sandia Corporation in investigating the subjects covered by the ... Report ... and in creating the [Report]. His work was in anticipation of litigation by the [two] Sandia investigators[.]" The court therefore concluded that the "Report was protected at the outset by the attorney-client privilege and the work product doctrine."

{10} Plaintiff argues that Bay was not acting as an attorney when conducting his investigation, but instead as an "independent investigator" who was charged only with "finding facts and reporting back." Relying on this characterization, Plaintiff further submits that "[w]hen an attorney is acting as an investigator, rather than as a lawyer rendering legal advice or assistance, the lawyer's activities are not covered by the privilege." We disagree. The facts recited above demonstrate Sandia's cognizance of the legal nature of the investigators' accusations, as well as Sandia's awareness that the allegations raised matters that could result in direct or vicarious liability on the part of Sandia for retaliation, fraud, and other illegal actions taken by its employees. We also reference Sandia's engagement letter to Bay, which made clear that "[o]f key interest to Sandia ... is whether such retaliation, and/or fraud, waste or abuse exists, and, if so, whether it is being allowed to go uncorrected[,]" and expressed Sandia's awareness that the investigators' allegations "contain[ed] the implicit and explicit threat of litigation, either by [the two investigators], or by other third parties."

{11} We find ample support in the record for the district court's decision that Bay's investigation was conducted in anticipation of litigation by the investigators or other third parties. Accordingly, we see no abuse of discretion in the district court's ruling that Bay's communications with Sandia and his investigation were protected at the outset by the attorney-client privilege and work product immunity. *Cf. Knight v. Presbyterian Hosp. Ctr.,* 98 N.M. 523, 525, 650 P.2d 45, 47 (Ct.App.1982) (extending attorney work product immunity to statements taken by a hospital employee from various persons involved in the treatment of a patient "for and on behalf of the hospital's attorney" after counsel apparently became aware that the treatment rendered to that patient raised the possibility of litigation).

## WAIVER OF THE ATTORNEY–CLIENT PRIVILEGE

{12} The district court found that Sandia had waived the attorney-client privilege by (1) disclosing the Report to persons outside the attorney-client privilege prior to and during this litigation, and (2) making direct use of the Report by relying upon it in defending against Plaintiff's claims. The question of whether a party has waived the attorney-client privilege is a matter of law which we review de novo. *See Public Serv. Co. of N.M. v. Lyons,* 2000–NMCA–077, ¶ 10, 129 N.M. 487, 10 P.3d 166.

{13} We hold that the district court committed no error in concluding that Sandia waived the attorney-client privilege with respect to the Report. Sandia's disclosure of the Report to the Plaintiff during this litigation, as well as Sandia's prior extrajudicial disclosures to members of Congress and to representatives of the Department of Energy, trigger waiver under the plain language of Rule 11–511 NMRA. That rule provides:

A person upon whom these rules confer a privilege against disclosure of the confidential matter or communication waives the privilege if the person or person's predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication. This rule does not apply if the disclosure is itself a privileged communication.

{14} In addition to disclosing the Report, Sandia has made direct use of the Report in this litigation in defending against Plaintiff's claim that Sandia violated the terms of an implied employment contract by demoting her without cause. This constitutes waiver under the rule articulated in *Lyons*. In that case, this Court adopted the Third Circuit's restrictive view of "at-issue" waiver, as articulated in *Rhone–Poulenc Rorer Inc. v. Home Indent. Co.*, 32 F.3d 851, 864–65 (3d Cir.1994). The "restrictive" nature of the adopted approach applies a bright-line rule to the question of whether a party has waived the attorney-client privilege; in New Mexico, waiver occurs where a party "seeks to limit its liability by describing [an attorney's] advice and by asserting that he relied on that advice." *Lyons*, 2000–NMCA–077, ¶ 22, 129 N.M. 487, 10 P.3d 166 (internal quotation marks and citation omitted).

{15} In *Lyons*, the plaintiffs affirmatively pled fraudulent concealment, equitable tolling and equitable estoppel "in anticipation of Defendant raising a statute of limitations defense." *Id.* ¶ 1. Defendant argued that Plaintiff had impliedly waived their attorney-client and work product privileges by so pleading because Defendant must be allowed to test Plaintiffs' assertion that it had been ignorant of the existence of its claims before it filed the action. *Id.* ¶ 7. We held that the fact that the plaintiffs' mental state (claimed ignorance) had been placed at issue in the case was insufficient to constitute a waiver of attorney-client communications on that subject. *Id.* ¶ 31. Instead, we adopted the more restrictive *Rhone* approach, which permits a finding of waiver only where a party directly relies on attorney client communications in order to advance a claim or defense. *Id.* ¶ 22. We found the *Rhone* approach to be most consistent with the purpose underlying the privilege, which " 'is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.' " *Lyons*, 2000–NMCA–077, ¶ 25, 129 N.M. 487, 10 P.3d 166 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584, (1981)). Our holding in *Lyons* reflected our recognition that waiver in New Mexico should be determined within the confines of Rule 11–511, which requires actual disclosure or "consent[ ] to disclosure" of attorney-client communications. *Lyons*, 2000–NMCA–077, ¶¶ 11–14, 129 N.M. 487, 10 P.3d 166. Under *Lyons*, where a party relies on an attorney's advice to advance a claim or defense, that party has implicitly "consented to disclosure" of those communications within the meaning of Rule 11–511. *Lyons*, 2000–NMCA–077, ¶¶ 15, 23, 129 N.M. 487, 10 P.3d 166.

{16} Applying that rule, we find no error in the district court's finding that Sandia has asserted an "advice of counsel" defense in this litigation by relying on the Report to demonstrate the lawfulness of its actions regarding Plaintiff. In contrast to the facts of *Lyons*, in which attorney-client communications were neither referred to nor relied upon by the plaintiffs in order to support an equitable tolling claim, Sandia has explicitly pled reliance upon Bay's advice in order to defend against Plaintiff's claims. While Sandia argues it has "not pled anything of the sort," we look to Sandia's response, which states:

> [Sandia] assert[s] in answer to Plaintiff's First Amended Complaint that if an agreement existed by which Plaintiff could be demoted or discharged only for cause, which is denied, there was no violation of any such agreement because in light of the ... Report, Sandia and Robinson in fact believed that they had a sufficient cause to justify any demotion or discharge of Plaintiff and that belief was reasonable.

{17} The language employed by Sandia in its response tracks the language of UJI 13–2306 NMRA, which sets out the standard for determining when an employer has discharged its duty to abide by the terms of an implied employment contract:

13–2306. Cause justifying discharge.

If (employer) agreed that (employee) could be discharged only for cause, (employer) could discharge (employee) without violating the agreement if (employer) *in fact believed that* [he][she] had a sufficient

cause to justify the discharge of (employee) and *that belief was reasonable.* (emphasis added).

{18} The standard articulated in UJI 13–2306 is both objective and subjective. It requires actual (i.e. subjective) belief on the part of the employer that its actions were justified, and also tests the objective reasonableness of that belief. *See Kestenbaum v. Pennzoil Co.,* 108 N.M. 20, 27–28, 766 P.2d 280, 287–88 (1988) (holding that a decision to terminate an employee where an implied contract is found must be supported by reasonable grounds for the employer to believe that sufficient cause existed to justify the employee's termination). By arguing that the Report provided sufficient cause to discipline Plaintiff, and by asserting reasonable reliance upon the Report's conclusions, Sandia seeks to prove in its favor both the objective and subjective elements of UJI 13–2306.

{19} Sandia argues that nothing it did put the report at issue so as to trigger a waiver under *Lyons* because it was Plaintiff who first challenged the veracity of the Report, and that Sandia's invocation of the report in this litigation was "merely defensive," i.e., a response to Plaintiff's claims. Sandia also takes the position that it has merely asserted its own good faith in response to Plaintiff's claims which placed Sandia's state of mind at issue. We think these arguments ignore the principles underlying the rule adopted in *Lyons,* as well as the disjunctive styling of the rule's operative language. *Lyons* stands for the proposition that a party who places either an opponent's or their own state of mind at issue in litigation does not thereby overcome or waive the attorney-client privilege with respect to communications that might be relevant, or even vital, to an evaluation of that party's claims. *Lyons,* 2000–NMCA–077, ¶ 21, 129 N.M. 487, 10 P.3d 166. However, where a party makes "direct *or* offensive" use of attorney-client communications in order to prove that it acted with a lawful intent, waiver will be found as a matter of law.

{20} As already discussed, Sandia has not merely asserted a lawful state of mind in response to Plaintiff's allegations that the Report's conclusions were false and that Sandia knew better than to rely upon them; Sandia has gone a step further, and asserted objective, reasonable reliance upon the Report's criticisms of Plaintiff's conduct. Even if not explicitly termed an "advice of counsel" defense by Sandia, we think it is beyond dispute that Sandia has asserted reliance on the Report as a complete defense to Plaintiff's claim that she was disciplined, without just cause, in violation of an implied employment contract between herself and Sandia. Accordingly, we hold that the district court correctly ruled, as a matter of law, that Sandia has made "direct or offensive" use of the Report in this case, effecting a waiver of the attorney-client privilege.

## SCOPE OF WAIVER

{21} Having concluded that the district court correctly determined that Sandia waived the attorney-client privilege with respect to the Report, we now turn to the district court's conclusions regarding the extent to which that waiver triggered a subject-matter waiver requiring the production of other protected materials. Regardless of the means by which a waiver of the attorney-client privilege or work product immunity is effected, the resulting scope of that waiver is a question addressed to the discretion of the district court. *See In re EchoStar Commc'ns Corp.,* 448 F.3d 1294, 1300 (Fed.Cir.2006) ("We review the district court's determination as to the scope of the waiver for an abuse of discretion."); *see also In re Sealed Case,* 29 F.3d 715, 719 (D.C.Cir.1994) (explaining that because delineation of a waiver's scope "depend[s] heavily on the factual context in which the privilege is asserted," such determinations are entitled to deferential review (internal quotation marks and citation omitted)); 2 Paul R. Rice, *Attorney–Client Privilege in the United States* § 9:77 (2d ed.2007) (stating that once the client has taken actions that are construed as a waiver of the privilege, the court must then assess the scope of that waiver. The decision of whether the waiver applies only to the actual communication disclosed or to additional communications that substantively relate to it is a discretionary one, based upon the judge's assessment of what is fair under the circumstances). We therefore review the

scope of the waiver, as established by the district court, to ensure that it was not "clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *See Sims v. Sims,* 1996–NMSC–078, ¶ 65, 122 N.M. 618, 930 P.2d 153.

{22} For the reasons stated below, we hold that the district court did not abuse its discretion in ordering production of (1) communications between Bay, Sandia managers, and Sandia's in-house counsel relating to the Plaintiff and the Report, and (2) Sandia's in-house counsel's work product relating to the Report that was communicated to Sandia managers. Sandia argues that the district court erroneously compelled production of these materials because (1) communications between Sandia's in-house counsel and Sandia's managers regarding Plaintiff and the Report have not been disclosed and are not being relied upon by Sandia in defending against Plaintiff's claims, and (2) the scope of any subject-matter waiver effected by Sandia's disclosure and direct use of communications with Bay should not encompass communications between Sandia's in-house counsel and Sandia's management.

{23} Sandia posits that "the [d]istrict [c]ourt ... was required to strictly apply Rule 11–511 to the internal Sandia in-house counsel communications," and that any waiver "extends only to those particular attorney-client communications which the privilege holder has thrust into the action." We agree with Plaintiff, however, that this argument replaces the proper inquiry—whether the district court abused its discretion in establishing the subject-matter scope of Sandia's waiver—with the legal standard applicable to the question of whether a waiver has occurred. The position advocated by Sandia stands in marked contrast to the generally accepted view that parties may not disclose attorney advice to prove a claim or defense while shielding from discovery communications from other attorneys on the same subject. *See Convolve, Inc. v. Compaq Computer Corp.,* 224 F.R.D. 98, 103 (S.D.N.Y.2004) (holding that waiver based upon reliance on advice of attorney "waives the attorney-client privilege as to the subject matter of the advice disclosed. This waiver extends not only to the attorney who rendered the [advice], but also to all other attorneys who may have advised or communicated with the client on the same subject matter").

{24} We also agree with Plaintiff that the principle of fairness for which those authorities stand is especially applicable here, where Bay was instructed to communicate with Sandia by both submitting a comprehensive report to Sandia's president as well as providing periodic updates regarding the progress of his investigation to Sandia in-house counsel. *Cf. Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.,* 210 F.R.D. 506, 510 (S.D.N.Y.2002) (holding that scope of subject-matter waiver resulting from party's advice of counsel defense included communications with both outside and in-house counsel, where outside counsel was instructed to communicate with client through in-house counsel); *Inmuno Vital, Inc. v. Telemundo Group, Inc.,* 203 F.R.D. 561, 564 (S.D.Fla.2001)(extending scope of waiver of attorney-client privilege to both the advice advanced by the party to support its legal position as well as communications with other attorneys on the same subject, stating that disclosure "cannot be limited to the counsel and advice of the [d]efendant's choosing. Rather, when the advice of counsel defense is raised, the party raising the defense must permit discovery of any and all legal advice rendered on the disputed issue").

{25} In light of Sandia's disclosure of the Report and assertion of actual and reasonable reliance thereon, we hold that the district court acted within its discretion in ordering production of all communications between Sandia, Bay, and Sandia's in-house counsel regarding Plaintiff and the Report that have not already been produced. We also hold that the other materials Sandia was ordered to produce—work product of Sandia in-house counsel relating to the Report that was *communicated* to non-legal representatives of Sandia—constitute attorney-client communications and are also a proper subject of discovery in this case.

## BAY'S WORK PRODUCT

{26} While we conclude that including Sandia's internal materials and attorney-client communications within the scope of

the waiver was virtually compelled in light of the defense raised in this case, we think requiring disclosure of Bay's work product too severely tests the logic supporting the district court's delineation of the scope of Sandia's waiver. Initially, we note that the district court expressly declined to order production of Sandia's in-house counsel's work product that was not communicated to Sandia representatives responsible for the actions taken against Plaintiff. By the same reasoning implicit in that ruling—that in-house counsel's uncommunicated work product does not bear on the legality of Sandia's decisions with regard to Plaintiff-we hold that the district court erred in ordering the converse with respect to Bay: that, as a result of Sandia's waiver of the attorney-client privilege, "work product protection for all materials prepared or compiled by Bay relating to the [Report] has been waived."

{27} Plaintiff submits that because Sandia has asserted an advice of counsel defense, the scope of the resulting subject-matter waiver necessarily includes the work product underlying that advice. Plaintiff principally relies on *Harding v. Dana Transp., Inc.* 914 F.Supp. 1084 (D.N.J.1996), for the proposition that reliance upon an attorney's investigation in advancing a defense waives the immunity for the attorney's work product underlying that investigation. In *Harding,* the defendant employer retained an outside attorney to conduct an investigation into an employee's allegations that she had been sexually harassed and discriminated against in violation of Title VII. *Id.* at 1087–88. When defending against actions brought under Title VII, employers may escape respondeat superior liability by taking sufficient remedial measures once a complaint of discrimination is received. *Id.* at 1096. Once litigation began, the employer pointed to the investigation performed by outside counsel to show that it had taken sufficient remedial measures to avoid liability for the plaintiff's claims. *Id.* In light of that defense, the appellate court affirmed the lower court's order requiring disclosure of the attorney's work product because the employer's defense in that case depended not just upon an evaluation of the employer's mental state, as informed by counsel, but instead upon the suf-

ficiency of the attorney's investigation itself. *Id.* The court concluded that because the trier of fact could not determine whether sufficient remedial measures had been taken without access to the content of the attorney's investigation, the employer's reliance on the sufficiency of the attorney's actions as a defense required disclosure of work underlying that investigation. *Id.* The substantive context of *Harding,* considered together with the nature of the defense raised in that case, logically explains that court's reasons for ordering disclosure of the contents of the attorney's investigation. Both the fact and substance of the investigation were invoked by the employer in that case to defend against the plaintiffs claims; it was therefore the sufficiency of the attorney's investigation itself, not just the employer's reliance upon it, that would absolve the employer of liability under Title VII.

{28} Unlike *Harding,* at issue in this case is not the sufficiency of Bay's investigation, but whether it was reasonable for Sandia to rely upon the Report in light of all of the information that Sandia had. *See, e.g., Harter ·v. Univ. of Ind.,* 5 F.Supp.2d 657, 665 (S.D.Ind.1998) (explaining distinction, for the purpose of determining the scope of waiver of attorney-client privilege and work product immunity, between defense based on a client's reliance on attorney-client communications and defense to respondeat superior liability based upon sufficiency of an attorney's investigation); *cf. Chimie v. PPG Indus., Inc.,* 218 F.R.D. 416, 421 (D.Del.2003) ("The attorney-client privilege and the work product doctrine are based on different public policies, protect different though frequently complementary interests, and are subject to different analyses when considering the propriety of a finding of waiver. Neither legal protection is well served by conflating the analysis of the two.") (citation omitted).

{29} Bay's work product that was not communicated or disclosed to Sandia did not and could not form any basis for Sandia's actions with regard to Plaintiff, and thus would not assist the trier of fact in determining either what Sandia actually believed, or whether that belief was reasonable. *See Conkling v. Turner,* 883 F.2d 431, 435 (5th Cir.1989)

(concluding that when a party relies upon attorney advice to advance a defense, work-product waiver is not automatically triggered, as "[t]hat approach reveals much more than what [the waiving party] knew and when [that party] knew it; it seeks to discover things known to [the party]'s attorneys that were unknown to [the party]"); *accord Rhone*, 32 F.3d at 866 (explaining that "[w]ork product that was not communicated to the client cannot affect the client's state of mind" in determining that waiver of attorney-client privilege did not extend to attorney work product that was not communicated to the client, and citing failure of lower court to "determine whether the [work product] sought [was] relevant to the matters in issue" (citation omitted)).

{30} We therefore conclude, in light of the facts and circumstances of this case, that the district court abused its discretion by including Bay's uncommunicated work product within the subject-matter scope of Sandia's waiver. However, for the same reason that Sandia's in-house counsel's work product that was communicated to Sandia must be produced, we hold that documents relating to plaintiff and the Report, that have been disclosed by Bay to Sandia, or which were provided to Bay by Sandia's in-house counsel or management, constitute attorney-client communications that fall within that portion of the district court's order that we affirm.

{31} Though we reverse the district court insofar as it extended the scope of Sandia's waiver to Bay's uncommunicated work product, Plaintiff may still seek discovery thereof, but only upon the showing required by our Court rules. *See* Rule 1–026(B)(4) (permitting discovery of work product upon a party's showing of "substantial need of the materials in the preparation of the party's case" and where the party "is unable without undue hardship to obtain the substantial equivalent of the materials by other means"). In the event such a showing is made, the district court may order disclosure of non-opinion work product, but "shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney." Rule 1–026(B)(4); *see Hartman*, 1997–NMCA–032, ¶ 23, 123 N.M. 220, 937 P.2d 979

(applying this standard). To the extent Sandia's use and reliance upon the Report in this case is expanded to defend against other claims raised by Plaintiff and not addressed in this opinion, the district court should consider, in light of the nature of any such defense, whether any further production should also be compelled.

## PLAINTIFF'S ADDITIONAL ASSERTION OF ERROR AND REQUEST FOR RELIEF

{32} Lastly, Plaintiff challenges the district court's decision with regard to the temporal scope of the waiver. Plaintiff argues that the district court's order should be affirmed, but her Answer Brief also injects an assertion of error and a request for discovery beyond the scope granted by the district court's order. Plaintiff did not file an application for interlocutory appeal to request such relief, and thus has not satisfied the requirements of Rule 12–203(A) NMRA (mandating that an application for interlocutory appeal be filed within 15 days after the entry of the order appealed from). Nor did Plaintiff file a cross-appeal on this issue in accordance with Rules 12–201(B) and 12–208(G) NMRA.

{33} Rule 12–201(C) permits this Court to review issues raised by an appellee where a cross-appeal has not been taken, but only where the appellee raises those issues "for the purpose of enabling the appellate court to affirm," or "for determination only if the appellate court should reverse, in whole or in part, the judgment or order appealed from." Rule 12–208(G) NMRA. Plaintiff's additional challenge to the district court's ruling regarding the temporal scope of the waiver satisfies neither of the criteria contained in Rule 12–201(C). We therefore decline to review this issue.

## CONCLUSION

{34} For the reasons stated above, we affirm all portions of the district court's order compelling discovery from Sandia, but reverse the order insofar as it requires production of Bay's uncommunicated work product. This case is remanded to the district

court with instructions to vacate the portion of the order reversed herein.

{35} IT IS SO ORDERED.

WE CONCUR: MICHAEL D. BUSTAMANTE and RODERICK T. KENNEDY, Judges.