**Electronically Filed
Supreme Court
SCWC-13-0000703
30-MAR-2016
08:11 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

GENE WONG,
Petitioner/Plaintiff-Appellant, Cross-Appellee,

vs.

HAWAIIAN AIRLINES, INC.,
Respondent/Defendant-Appellee, Cross-Appellant.

SCWC-13-0000703

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-13-0000703; CIV NO. 11-1-2459)

MARCH 30, 2016

RECKTENWALD, C.J., McKENNA, POLLACK, AND WILSON, JJ.,
AND NAKAYAMA J., CONCURRING AND DISSENTING

OPINION OF THE COURT BY POLLACK, J.

This case involves claims brought by a retired employee against his former employer for allegedly providing inaccurate information regarding the late enrollment penalty that applies to Medicare Part B. The circuit court granted summary judgment in favor of the employer concluding that the retiree's negligent and negligent misrepresentation claims were

preempted by federal law, and the Intermediate Court of Appeals affirmed the summary judgment on appeal. We conclude that the record in this case does not support federal preemption of the negligent and negligent misrepresentation claims.[1]

## I. BACKGROUND

Gene Wong was employed as a pilot by Hawaiian Airlines, Inc. (HAL) until he retired at the mandatory retirement age of sixty in 1996. Upon retiring, Wong became eligible to receive medical insurance paid for by HAL. HAL is obligated to provide retired pilots with medical coverage pursuant to a collective bargaining agreement between HAL and the Airline Pilots Association (Pilots Agreement). The Pilots Agreement contemplates coordination of the plan benefits provided by HAL with Medicare benefits:[2]

> The Company shall continue to provide the medical, dental, drug and vision coverage in effect as of . . . the date of . . . Normal Retirement under the Retirement Plan for Pilots of Hawaiian Airlines, Inc. and such pilot's spouse until age sixty-five (65) at which time the Company shall provide coverage, which when coordinated with Medicare benefits, shall maintain the benefits to which the pilot would have been entitled to had s/he not retired.

---

[1] We also consider the circuit court's granting of summary judgment on Wong's unfair or deceptive practice claim on grounds other than preemption and the circuit court's award of costs.

[2] "Medicare is the federal health insurance program for people who are 65 or older. . . . Part B covers certain doctors' services, outpatient care, medical supplies, and preventive services." Medicare.gov, *What is Medicare?*, https://www.medicare.gov/sign-up-change-plans/decide-how-to-get-medicare/whats-medicare/what-is-medicare.html (last visited Oct. 26, 2015).

2

When Wong became eligible for Medicare Part B in 2001, he consulted with HAL's Director of Employee Benefits and Compensation about whether or not he should enroll in Medicare Part B. Wong consulted with the benefits director regarding Medicare in part because the Medicare documents he received instructed him to contact his former employer's human resources department.[3] Wong alleges that the employee benefits director advised him that he did not need to enroll in Medicare Part B because HAL would provide him with his primary medical insurance and "he could switch without penalty later."

Wong contacted HAL's benefits director in 2010 when his wife became eligible for Medicare Part B coverage; his email to the director states the following:

> If for some reason; I lose my medical, you mentioned that I would be able to enroll into the Medicare program without the penalty for both parts A & B since I was previously covered under an equal or better program. The Social Security is telling me that I should hold a letter that states my existing coverage is equal or better than Medicare and should I lose it, I can produce, that letter to allow myself and spouse to enroll in their program without the penalties . . . .

Wong also met with the director to discuss Medicare, at which time he asked for her assistance in enrolling in Medicare Part B. Wong requested that the benefits director write a letter for him to assist him in signing up for Medicare Part B. Wong

---

[3] Upon retiring, Wong received a summary of his retiree benefits from HAL that provided a telephone number that retirees could call should they have any questions regarding their benefits.

received a letter from the director confirming that she provided Wong with inaccurate information regarding Medicare:

> This is to confirm that we provided you with some incorrect information regarding Medicare when you turned 65. I've completed forms for Medicare in the past that requested cancelation data so that people could apply for Medicare at a delayed point in time when their group coverage was canceled. Since you will remain qualified for full coverage under our HMSA plan for your lifetime, we told you that if at some point in time your plan was canceled, we would be able to provide you with the necessary information in order to avoid the late enrollment penalty. I now know that this was incorrect.
>
> Please see if Social Security is able to waive the late enrollment penalty because of the misinformation that you were provided.

The employee benefits director wrote the letter with the understanding that the letter would serve as proof for Wong to avoid the late enrollment penalty in enrolling in Medicare.

Wong claims that, as a result of the misinformation he received from the benefits director, he did not complete the necessary forms to enroll in Medicare Part B coverage in 2001 through March of 2010.[4] Wong brought claims of negligence, negligent misrepresentation, and unfair or deceptive practice (UDAP) against HAL in the Circuit Court of the First Circuit (circuit court). Wong's complaint alleged that HAL "had a fiduciary, statutory, and common law duty" to provide Wong "with reasonably accurate Medicare retirement information." Wong also

---

[4] Wong was not enrolled in Medicare Part B when he filed his complaint on October 18, 2011. He later enrolled in Medicare on January 31, 2012. Wong indicated that beginning on July 1, 2012, his monthly Medicare premium of $239.80 would be deducted from his Social Security check; this premium included $99.90 for late filing surcharges for Medicare Part B.

alleged that HAL had a duty to supply Wong with correct information regarding whether he should choose to have HAL's medical plan or Medicare Part B as his primary health care insurer.  Wong contended that HAL's conduct in providing him incorrect information regarding Medicare Part B constituted an unfair or deceptive trade practice pursuant to Chapter 480 of the Hawai'i Revised Statutes (HRS), which financially injured him.  Wong asserted that he suffered over $286,846.72 in damages as a result of the inaccurate information provided by HAL.[5]

HAL moved for summary judgment arguing, inter alia, that Wong's claims for negligence and negligent misrepresentation failed because HAL did not owe Wong a duty of care relating to information regarding Medicare.[6]  The circuit court denied HAL's motion for summary judgment in part because the court found that there were genuine issues of material fact as to whether HAL owed Wong a duty.[7]

HAL later filed a second motion for summary judgment arguing that Wong's negligence claims were preempted by federal

---

[5]     Wong specifically asserted the following: "(a) $286,846.72 based on calculated incremental increases each year for Medicare Part B coverage; (b) an additional adjustment for inflation and increases in the cost of Medicare in an amount to be computed and proven at trial; and (c) interest at the rate of ten percent (10%) from March 1, 2010."

[6]     In arguing that HAL owed him a duty of care, Wong cited to an HMSA brochure instructing that more information regarding the Medicare coordination rules could be obtained by "contact[ing] your employer or the Centers for Medicare & Medicaid Services."

[7]     The Honorable Karl K. Sakamoto presided.

law.  HAL argued that Wong's negligence claims were preempted by the Railroad Labor Act (RLA) because any duty HAL owed to Wong would be derived from HAL's obligations to retired pilots under the Pilots Agreement.  In support of its motion, HAL maintained that it was obligated to provide Wong with medical benefits to be coordinated with Medicare under the Pilots Agreement.  HAL also maintained that any obligation to provide information about health benefits would flow from its duty to provide such benefits under the Pilots Agreement.  With regard to Wong's UDAP claim, HAL argued that the claim failed because the alleged conduct did not occur "in the conduct of any trade or commerce" as required by HRS Chapter 480.

Wong maintained that his negligence and negligent misrepresentation claims had no relation to the Pilots Agreement and that "torts like this are independent of the contract."  In response to HAL's arguments regarding the UDAP claim, Wong argued that HAL "was engaged in transportation business, and part of that business was providing information to its retirees."

The court granted HAL's second motion for summary judgment, concluding that Wong's negligence and negligent misrepresentation claims were preempted by the RLA.  The court also ruled in favor of HAL on the UDAP claim because the alleged unfair or deceptive act did not occur in "the conduct of any

6

trade or commerce." The circuit court's June 6, 2013 Final Judgment included an award of costs in the amount of $11,855.30 in favor of HAL.

Wong appealed the circuit court's order granting HAL's second motion for summary judgment and the court's Final Judgment to the Intermediate Court of Appeals (ICA), Wong argued that his negligence claims are independent of the Pilots Agreement and "there is no need to interpret the contract in this case" with regard to his claims. HAL responded that "[w]hen negligence claims are premised on actions taken by an employer pursuant to CBA[8]-imposed duties, resolution of negligence claims often requires interpretation of the CBA to evaluate the reasonableness of the employers actions." HAL asserted that "Wong cannot avoid the RLA's mandatory arbitral mechanism by omitting references to the Pilots Agreement in his Complaint and by characterizing HAL's actions solely by reference to state-law torts."

The ICA affirmed the circuit court's granting of HAL's second motion for summary judgment. The ICA concluded that Wong's negligence claims were preempted by the RLA because HAL's duty to Wong arose from its duties under the Pilots Agreement. In reaching this conclusion, the ICA's analysis seems to assume that HAL's duty to Wong under the Pilots Agreement was to act

---

[8]     "CBA" refers to a collective bargaining agreement.

7

with reasonable care to ensure that its representatives did not provide him with misinformation about retirement benefits. The ICA also concluded that it was not error for the circuit court to dismiss Wong's UDAP claim because HAL's provision of medical coverage information to Wong did not occur in a "business context." Additionally, the ICA affirmed the circuit court's grant of costs to HAL.

Wong filed an Application for Writ of Certiorari requesting that this court review the ICA Judgment on Appeal. Wong contends that the ICA erred in holding that his negligence and negligent misrepresentation claims were preempted by the RLA, in holding that his UDAP claim failed because the claim did not occur in the conduct of trade or commerce, and in affirming taxation of costs.

With regard to the RLA preemption determination, Wong argues that he "alleged and proved facts supporting his negligence and negligent misrepresentation claims against" HAL. Wong maintains that these state law claims are independent of the Pilots Agreement, do not involve interpretation of the agreement, and therefore they are not preempted by the RLA. Wong contends that HAL owed him a "duty to act reasonably under the facts and circumstances of this case." He asserts that Hawai'i courts recognize the tort of negligent misrepresentation as set forth in the

Restatement Second of Torts "particularly where [the defendant] undertook to misinform Plaintiff."

Wong also contends that the ICA's holding that the alleged conduct did not occur in trade or commerce is flawed and that the Court was clearly in error in granting summary judgment upon his UDAP claim.

HAL maintains that the ICA did not err in affirming the circuit court's granting of summary judgment in favor of HAL on Wong's negligence claims. HAL argues that "any duty owed by HAL to provide information to Wong about Medicare Part B penalties and its interaction with the medical coverage provided by HAL arose from and was intertwined with HAL's CBA-obligation to provide medical coverage to retired pilots." HAL also argues that "the ICA correctly recognized that Wong's negligence-based claims were not independent of the CBA, but rather, they did arise from CBA-imposed duties to provide benefits to retired pilots."

HAL asserts that the ICA did not err in granting the motion for summary judgment on Wong's UDAP claim because "the transaction upon which this claim is based did not occur 'in the conduct of any trade or commerce.'" HAL asserts that the ICA's ruling "is consistent with the decisions of many other courts examining statutes similar to HRS § 480-2, which have held that

'[d]isputes arising out of the employer-employee relationship do not meet the trade or commerce requirement.'"

## II. STANDARD OF REVIEW

"An award of summary judgment is reviewed de novo under the same standard applied by the circuit court." Omerod v. Heirs of Kaheananui, 116 Hawai'i 239, 254, 172 P.3d 983, 998 (2007) (quoting Taniguchi v. Ass'n of Apartment Owners of King Manor, Inc., 114 Hawai'i 37, 46, 155 P.3d 1138, 1147 (2007)). In considering a motion for summary judgment, the court "must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion." Id. (quoting Taniguchi, 114 Hawai'i at 46, 155 P.3d at 1147).

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.

Id. (alteration omitted) (quoting Taniguchi, 114 Hawai'i at 46, 155 P.3d at 1147).

## III. DISCUSSION

### A.

Wong contends that his negligence and negligent misrepresentation claims against HAL are not preempted by the RLA. "The RLA . . . sets up a mandatory arbitral mechanism to handle disputes 'growing out of grievances or out of the

10

interpretation or application of agreements concerning rates of pay, rules, or working conditions.'" Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246 (1994) (quoting 45 U.S.C. § 153), aff'g Norris v. Hawaiian Airlines, Inc., 74 Haw. 648, 847 P.2d 263 (1993), pursuant to 74 Haw. 235, 842 P.2d 634; see also 45 U.S.C. § 153(i) (2006). The United States Supreme Court articulated the preemption standard that applies under the RLA in Hawaiian Airlines, Inc. v. Norris: "that a state-law cause of action is not pre-empted by the RLA if it involves rights and obligations that exist independent of the [collective bargaining agreement]." 512 U.S. at 260. Thus, "where the resolution of a state-law claim depends on an interpretation of the [collective bargaining agreement], the claim is pre-empted." Id. at 261. The Court observed, "however, that 'purely factual questions' about an employee's conduct or an employer's conduct and motives do not 'requir[e] a court to interpret any term of a collective-bargaining agreement.'" Id. (quoting Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 407 (1988)).

The issue in Norris was whether an aircraft mechanic who claimed that he was discharged for refusing to certify the safety of a plane that he considered unsafe could pursue available state law remedies for wrongful discharge. Id. at 248. The aircraft mechanic in Norris initially challenged his discharge under a collective bargaining agreement governing his

11

employment; the agreement guaranteed that an employee may only be discharged for just cause and may not be disciplined for refusing to perform work in violation of safety laws. Id. at 250. After appealing his grievance to a step three grievance hearing, the employer offered to reduce the mechanic's punishment to suspension without pay. Id. The mechanic did not respond to the offer or further pursue his claim through the grievance procedures, and he later filed suit against his employer in Hawai'i state court alleging wrongful discharge under Hawai'i law. Id.

The Norris Court held that the RLA did not preempt the wrongful discharge claim. 512 U.S. at 248. Norris adopted the preemption framework applied to the Labor Management Relations Act (LMRA) in Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399 (1988). The relevant question under Lingle, the Court explained, is whether the state law claims are independent of the collective bargaining agreement. Norris, 512 U.S. at 266. The Court concluded that the aircraft mechanic's state law claims were not preempted by the RLA because "whether the employer's actions make out the elements of discharge under Hawaii law--is a 'purely factual question[n].'" Id. (alteration in original) (quoting Lingle, 486 U.S. at 407).

Accordingly, under Norris, a state law claim is preempted by the RLA if the resolution of the claim requires

interpretation or application of a collective bargaining agreement. This same standard was applied in United Steelworkers of America v. Rawson, 495 U.S. 362 (1990). Although the Rawson decision was not cited by the Court's later decision in Norris, it provides a useful illustration of the application of LMRA preemption of a state claim that is simply seeking to enforce a collective bargaining agreement. Rawson involved wrongful death actions brought against a union by the survivors of four miners who were killed in an underground fire. 495 U.S. at 364. The complaint included a negligence claim that the miners' deaths were caused by their union's negligence.

The plaintiffs in Rawson specifically relied on the collective bargaining agreement in setting forth their negligence allegations. The complaint stated that the union "undertook to act as accident prevention representative and enforcer of an agreement negotiated between [sic] [the Union] on behalf of the deceased minors" and "undertook to provide representatives who inspected [the Sunshine Mine] and pretended to enforce the contractual accident prevention clauses." Id. at 364-65 (alterations in original). The United States Supreme Court concluded that the negligence claim could not be described as independent of the collective bargaining agreement because the "only possible interpretation" of the pleadings was that the

13

union assumed the relevant duty under a collective bargaining agreement.  Id. at 370-71.

The Rawson Court noted that a party may not evade the requirements of the LMRA "by relabeling their contract claims as claims for tortious breach of contract."  495 U.S. at 369 (quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985)).  Thus, the plaintiffs in Rawson could not bring state negligence claims for the union's actions that were undertaken pursuant to the provisions of a collective bargaining agreement where "the agreement determined the nature and scope of the Union's duty." [9]  Id. at 371.  The Court explained that the Union

---

[9]     HAL quotes from the following passage from the Rawson opinion in which the Court contrasts the situation in Rawson with other possible circumstances:

> This is not a situation where the Union's delegates are accused of acting in a way that might violate the duty of reasonable care owed to every person in society.  There is no allegation, for example, that members of the safety committee negligently caused damage to the structure of the mine, an act that could be unreasonable irrespective of who committed it and could foreseeably cause injury to any person who might possibly be in the vicinity.

Rawson, 495 U.S. at 371.  The Rawson court determined that a duty created by a collective bargaining agreement cannot exist "independent of the collective bargaining agreement."  See Rawson, 495 U.S. at 369; see also Stringer v. Nat'l Football League, 474 F. Supp. 2d 894, 908 (S.D. Ohio 2007) ("[T]he holding in Rawson was not dependent on a finding that the duty allegedly violated was owed only to the miners as opposed to 'every person in society.' Instead, the Court found that the wrongful death claim was preempted because '[i]f the Union failed to perform a duty in connection with inspection, it was a duty arising out of the collective-bargaining agreement signed by the Union as the bargaining agent for the miners.'" (second alteration in original) (quoting Rawson, 495 U.S. at 371)); Betty v. Brooks & Perkins, 521 N.W.2d 518, 525 (Mich. 1994) (explaining that the duty in Rawson "was owed only to union members by virtue of the terms of a collective bargaining agreement" rather than to "every current and prospective employee, regardless of union status").

14

assumed the duty in accordance to a collective bargaining agreement and, thus, the miners could not enforce the collective bargaining agreement through a state negligence claim:

> If the Union failed to perform a duty in connection with inspection, it was a duty arising out of the collective-bargaining agreement signed by the Union as the bargaining agent for the miners.  Clearly, the enforcement of that agreement and the remedies for its breach are matters governed by federal law.

Id.  Hence, the Rawson decision demonstrates that RLA preemption applies where a plaintiff seeks to enforce a duty arising from a collective bargaining agreement through a state law claim.

Under the Court's preemption analysis, a state law claim is preempted by the RLA if the resolution of the claim requires interpretation or application of a collective bargaining agreement.  Norris, 512 U.S. at 260; Rawson, 495 U.S. at 369.  "The plaintiff's claim is the touchstone for this analysis; the need to interpret the [agreement] must inhere in the nature of the plaintiff's claim."  Ward v. Circus Circus Casinos, Inc., 473 F.3d 994, 998 (9th Cir. 2007) (quoting Cramer v. Consol. Freightways, Inc., 255 F.3d 683, 691 (9th Cir. 2001)).  Accordingly, "[w]hen liability is governed by independent state law, the mere fact that a collective bargaining agreement will be consulted or referred in the course of state-law litigation does not require the claim to be extinguished."  E.g., Casumpang v. ILWU, 94 Hawaiʻi 330, 343, n.14, 13 P.3d 1235, 1248, n.14 (2000) (citing Livadas v.

15

Bradshaw, 512 U.S. 107, 122-26 (1994)).  Additionally, a defense based on an agreement "is alone insufficient to require preemption." Ward, 473 F.3d at 998 (citing Caterpillar Inc. v. Williams, 482 U.S. 386, 398-99 (1987)).

In this case, Wong has not relied on the Pilots Agreement in making out his claims for negligence and negligent misrepresentation.  Wong's complaint alleged that HAL "had a fiduciary, statutory, and common law duty" to provide Wong "with reasonably accurate Medicare retirement information."  Wong also alleged that HAL had a duty to supply Wong with correct information regarding whether he should choose to have HAL's medical plan or Medicare Part B as his primary health care insurer.  Wong did not rely on the Pilots Agreement when discussing HAL's duty in his submissions to the circuit court or during the hearings on HAL's motions for summary judgment. Instead, in his memorandum in opposition to the first motion for summary judgment, Wong cited to an HMSA brochure instructing that more information regarding the Medicare coordination rules could be obtained by "contact[ing] your employer or the Centers for Medicare & Medicaid Services."  Wong also referenced the Restatement, Second of Torts § 552, which imposes a duty on an employer in the course of business for negligent misrepresentation.  Thus, there is nothing in the record to indicate that Wong's state law claims of negligence and

negligent misrepresentation are dependent on the Pilots Agreement.

In its analysis, the ICA assumed that "Hawaiian's duty to act with reasonable care to ensure that its representatives do not provide misinformation about retirement benefits arose from its duties" under the Pilots Agreement. The ICA does not explain the origin for this conclusion, which is not found in the circuit court's findings. To the contrary, the circuit court specifically found that there were genuine issues of material fact as to whether HAL owed Wong a duty. Given that there are questions of material fact as to whether HAL owed Wong a duty, the record is insufficient for a reviewing court to make a determination regarding the question of duty as a matter of law.

More importantly, even assuming that HAL owed Wong a duty of care under the Pilots Agreement, it would not foreclose Wong from bringing his state law claims for negligence and negligent misrepresentation that are independent of the agreement. The United States Supreme Court has already rejected the proposition that the RLA and LMRA enable private parties to evade state law:

> Of course, not every dispute concerning employment, or tangentially involving a provision of a collective bargaining agreement, is preempted by § 301 or other provisions of the federal labor law . . . . Nor is there any suggestion that Congress, in adopting § 301, wished to give the substantive provisions of private agreements the

17

> force of federal law, ousting any inconsistent state
> regulation . . . .

Norris, 512 U.S. at 260 (alterations in original) (quoting

Lueck, 471 U.S. 202, 211 (1985)).  Indeed, the Court in Norris

did not accord any weight to the fact that the plaintiff in that

case had the option to seek redress for his discharge through

either the grievance procedures of a collective bargaining

agreement or in state court under state law claims.  Norris, 512

U.S. at 250; see also Ward, 473 F.3d at 999 ("A state law claim

is not preempted simply because it may require consideration of

the same factual issues as a federal labor law." (citing Lingle,

486 U.S. at 410)).

By extension, HAL's argument that any duty HAL owed to

Wong would be "intertwined with Hawaiian's duty to provide

medical coverage to its retired pilots" is not demonstrated in

the record before this court.  HAL's emphasis on the Pilots

Agreement's contemplation that HAL's medical coverage would be

"coordinated with Medicare benefits" is not dispositive of the

RLA preemption determination because, even if HAL owed Wong a

duty under the Pilots Agreement, Wong is not foreclosed from

bringing state law claims that are independent of the agreement.

Additionally, HAL suggests that, because it is obligated to

provide medical coverage under the Pilots Agreement, "any

information supplied by Hawaiian would be provided in connection

with its duty."  Thus, HAL seems to suggest that, by virtue of

its contractual obligation to provide medical coverage, it is insulated from all state law claims with regard to their providing of "information" to retired pilots.  However, such an understanding of RLA preemption would give "private agreements the force of federal law," Norris, 512 U.S. at 260 (quoting Lueck, 471 U.S. at 211), allowing circumvention of state law through the collective bargaining process.

In summary, there is nothing in the record to demonstrate that Wong's negligence and negligent misrepresentation claims are not independent of the Pilots Agreement, and, thus, HAL has not sustained its burden to establish that Wong's negligence and negligent misrepresentation claims are preempted by the RLA.  See Casumpang, 94 Hawai'i at 340, 13 P.3d at 1245 (describing the defense's burden to establish preemption).  Thus, the ICA and the circuit court erred in finding that Wong's negligence and negligent misrepresentation claims are preempted by the RLA.[10]  In light of

---

[10]    The minority suggests that it is necessary for the court to first determine Wong has a "viable" state claim before determining whether Wong's claim is preempted by the RLA.  See minority at 5-6. Instead, under the preemption analysis of the Supreme Court, a state law claim is preempted by the RLA if the resolution of the claim requires interpretation or application of a collective bargaining agreement.  Norris, 512 U.S. at 260; Rawson, 495 U.S. at 369 (articulating the federal preemption analysis).  As the minority acknowledges, "Wong asserts only a common law right not to receive false information negligently, which he claims is not based on the CBA . . . ." Minority at 3.  Therefore, the minority's conclusion that "Wong's claim is preempted," minority at 2, is erroneous.

The minority also concludes "as a matter of law that, state law does not impose the duty of care on HAL that Wong asserts in this case." Minority at 6.  As previously stated, the circuit court found genuine issues
(continued . . .)

our ruling, we also vacate the circuit court's award of costs in favor of HAL and the ICA affirmance of the award.

**B.**

HRS § 480-2 (2008) declares that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."  The purpose of the prohibition on unfair methods of competition and unfair or deceptive acts or practices is to "enjoin unfair and deceptive practices by which consumers are defrauded and the economy of the state are harmed."  H. Stand. Comm. Rep. No. 55, in 1965 House Journal, at 538; see also Cieri v. Leticia Query Realty, Inc., 80 Hawai'i 54, 65, 905 P.2d 29, 40 (1995) ("[T]he legislative history to §§ 480-2 and 480-13 makes clear that the paramount purpose of both statutes is to prevent deceptive practices by businesses that are injurious to other businesses and consumers." (emphasis omitted) (quoting Beerman v. Toro Mfg. Corp., 1 Haw. App. 111, 118, 615 P.2d 749, 754 (1980)).

This court has held that "in order to fall within the purview of HRS Chapter 480, a claim for alleged unfair and deceptive acts or practices . . . must stem from a transaction

_____

(continued . . .)
of material fact as to whether HAL owed Wong a duty.  While the minority references the Restatement (Second) of Torts § 552, the comments to this section provides a possibly relevant explanation of this section. Restatement (Second) of Torts § 552 cmt. d. (1977) (recognizing that a defendant's pecuniary interest normally lies in a consideration paid for the transaction and that "[i]t may, however, be of a more indirect character"). However, we do not address whether HAL owed a duty to Wong under state law.

involving 'conduct in any trade or commerce.'" Cieri, 80 Hawai'i at 65, 905 P.2d at 40; see Haw. Cmty. Fed. Credit Union v. Keka, 94 Hawai'i 213, 227, 11 P.3d 1, 15 (2000) (construing Cieri). Whether an act or practice occurs in the "conduct of any trade or commerce" depends on whether or not the act or practice is perpetrated in a "business context." Cieri, 80 Hawai'i at 63, 905 P.2d at 40. The question of whether a transaction occurs within a "business context" is determined "on a case-by-case basis by an analysis of the transaction."[11] See Cieri, 80 Hawai'i at 65, 905 P.2d at 40.

The Cieri court cited approvingly of Massachusetts case law identifying six factors to aid courts in determining whether a transaction took place in a "business context":

> (1) the nature of the transaction; (2) the character of the parties involved; (3) the activities engaged in by the parties; (4) whether similar transactions had been undertaken in the past; (5) whether the transaction was motivated by business or for personal reasons . . . ; and (6) whether the participant played an active part in the transaction.

Id. at 63, 905 P.2d at 38 (citing Begelfer v. Najarian, 409 N.E.2d 167, 176 (Mass. 1980)). It is noted that the Cieri

---

[11]    Evaluating the transaction on a case-by-case basis is consistent with the broad language of HRS § 480-2. In adopting such a broad prohibition on unfair and deceptive acts, the legislature recognized that it would be impractical to enact laws fully defining the various practices it sought to prohibit. H. Stand. Comm. Rep. No. 55, supra. "It is also practically impossible to define unfair practices so that the definition will fit business of every sort . . . . Whether competition is unfair or not generally depends upon the surrounding circumstances of the particular case. What is harmful under certain circumstances may be beneficial under different circumstances." Id. (quoting House Report No. 1142, 63d Congress, 2d Sess., September 4, 1914, at page 19).

decision does not require consideration of any or all of these factors, and it does not limit the court to a consideration of only these six factors.

Wong alleged in his complaint that HAL's conduct in providing him incorrect information regarding Medicare Part B constituted a deceptive trade practice. Wong further contended that he "is a consumer within the meaning of HRS § 480-1, in that he committed money in a personal investment." He also maintained, "The misrepresentation by Defendant was material to Plaintiff's decision to not choose Medicare Part B as opposed to remaining with the Defendant's current and existing Pilots' group insurance plan with HMSA." In light of the summary judgment evidentiary record, and applying the criteria listed above, the circuit court and the ICA did not err in concluding that the alleged conduct did not occur in "the conduct of any trade or commerce."

## IV. CONCLUSION

Accordingly, the ICA's June 25, 2014 Judgment on Appeal is vacated to the extent that it affirms the circuit court's granting of summary judgment in favor of HAL on Wong's negligence and negligent misrepresentation claims and the granting of HAL's motion for taxation of costs. The ICA's Judgment on Appeal is affirmed to the extent that it affirms the circuit court's granting of summary judgment in favor of HAL on

Wong's UDAP claim.  Additionally, the circuit court's April 10, 2013 "Order Granting Defendant Hawaiian Airlines, Inc.'s Motion for Summary Judgment, Filed January 29, 2013" and the June 6, 2013 Final Judgment are vacated except with regard to the granting of summary judgment in favor of HAL on Wong's UDAP claim.  The case is remanded to the circuit court for further proceedings consistent with this opinion.

R. Steven Geshell
for petitioner

C. Michael Heihre and
Allison Mizuo Lee
for respondent

/s/ Mark E. Recktenwald

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

