**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000506
28-MAY-2021
08:35 AM
Dkt. 75 SO**

NO. CAAP-17-0000506

IN THE INTERMEDIATE COURT OF APPEALS
OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
REBECCA S. GARCIA, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE SECOND CIRCUIT
(CASE NO.  2DCW-16-0001344)

SUMMARY DISPOSITION ORDER
(By:  Ginoza, Chief Judge, Leonard and Nakasone, JJ.)

Defendant-Appellant Rebecca S. Garcia (**Garcia**) appeals from the Judgment and Notice of Entry of Judgment (**Judgment**), filed on June 2, 2017,[1] in the District Court of the Second Circuit (**District Court**).[2]  After a bench trial, the District Court convicted Garcia of Harassment in violation of Hawaii Revised Statutes (**HRS**) § 711-1106(1)(a) (2014) (**Harassment**).[3]

---

[1]  An Amended Judgment and Notice of Entry of Judgment (**Amended Judgment**) was filed on April 16, 2018, to correct the June 2, 2017 Judgment that mistakenly stated that Garcia had entered a guilty plea.  On May 31, 2018, we entered an order granting the Plaintiff-Appellee State of Hawai'i's (**State**) request to supplement the record with the Amended Judgment that corrected the mistake.  We construe Garcia's appeal as an appeal from the Amended Judgment.

[2]  The Honorable Blaine J. Kobayashi presided.

[3]  HRS § 711-1106(1)(a) provides, in relevant part:

(continued...)

The District Court sentenced Garcia to pay a $250 fine and a $30 Criminal Injuries Compensation Fund fee.

On appeal, Garcia raises a single point of error contending that she received ineffective assistance from her trial counsel because trial counsel was not accompanied by a supervising attorney at trial,[4] trial counsel failed to make "proper objections" to the State's leading questions, and trial counsel showed "lack of interest" in the case;[5] and as a result, Garcia's "otherwise meritorious defense was substantially impaired."[6]

---

[3](...continued)
> **Harassment.** (1) A person commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person:
>
> > (a) Strikes, shoves, kicks, or otherwise touches another person in an offensive manner or subjects the other person to offensive physical contact[.]

[4] No "facts material to consideration" of this particular argument regarding the absence of a supervising attorney appears in the statement of the case, and there are no record references supporting these factual statements as required by Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(3). No argument was presented in the "Argument" section of the brief, and thus it is waived. See HRAP Rule 28(b)(7) (requiring that the argument containing the contentions on the points presented cite the parts of the record relied on, and that "[p]oints not argued may be deemed waived."); see Taniguchi v. Ass'n of Apartment Owners of King Manor, Inc., 114 Hawaiʻi 37, 53, 155 P.3d 1138, 1154 (2007) (waiving argument not supported by reference to the record) (citations omitted).

[5] In the point of error, Garcia complains of "one instance" of what she characterizes as trial counsel's "lack of interest," which occurred when the District Court asked trial counsel whether he had an objection to the State's request for judicial notice, to which trial counsel responded, "I'm sorry, what was the question?" In the argument section, no argument was presented explaining how an isolated request to repeat a question constituted ineffective assistance. This argument is waived. See HRAP Rule 28(b)(7).

[6] Garcia's Opening Brief fails to comply with HRAP Rule 28(b)(4)(i) and (ii), because her point of error does not state where in the record the failures to object occurred, and only identifies a record reference for the "lack of interest" claim. However, the "remaining sections of the brief provide the necessary information to identify [Garcia's] argument." Marvin v. Pflueger, 127 Hawaiʻi 490, 496, 280 P.3d 88, 94 (2012). We thus address the merits of this argument.

(continued...)

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Garcia's point of error, and affirm.

The pertinent background is as follows. The State's May 26, 2016 complaint against Garcia charged her with Harassment against her sister-in-law Ellen Frenette Garcia (**Complainant**) in violation of HRS § 711-1106(1)(a).[7] A bench trial was held on June 2, 2017, where Garcia was represented by Deputy Public Defender, William Pannell, Esq., and co-counsel, Tyler Stevenson, Esq. The subject incident occurred on December 27, 2015, between 11:00 a.m. and noon, during a dispute between Garcia and Complainant over their shared use of a laundry clothesline, which turned physical, and Complainant called the police.

Garcia and Complainant are sisters-in-law, married to brothers Samuel Garcia, Jr. (**Garcia's husband**) and Jon Garcia (**Complainant's husband**). They lived in adjacent homes and shared a clothesline, alternating days of the week for their use of the clothesline. On the day of the incident, Complainant, Garcia, and Garcia's husband had an argument over the shared clothesline, because Garcia's laundry was still on the clothesline when Complainant attempted to hang her clothes.

---

[6](...continued)
Garcia's appellate counsel also failed to serve a copy of the brief on the attorney alleged to have been ineffective, as required by HRAP Rule 28(a), where a claim of ineffective counsel has been raised.

[7]     The Complaint stated:

> That on or about the 27th day of December, 2015, in the Division of Wailuku, County of Maui, State of Hawaii, REBECCA GARCIA, with intent to harass, annoy or alarm another person, did strike, shove, kick, and/or otherwise touch Ellen Frenette Garcia in an offensive manner and/or subject Ellen Frenette Garcia to offensive physical contact, thereby committing the offense of Harassment in violation of Section 711-1106(1)(a) of the Hawaii Revised Statutes.

Officer Toma Asuega-Stark (**Officer Asuega-Stark**) testified that he spoke to Complainant upon arrival, and Complainant wanted to make a complaint against Garcia. Complainant described the argument over the clothesline, and reported that Garcia was yelling and swearing at Complainant, threw water on Complainant's head, and slapped Complainant, causing pain. Complainant did not say that she was hit from behind or blind-sided. Officer Asuega-Stark also spoke to Garcia, who said she did throw water on Complainant. Garcia did not tell the officer she had to push Complainant away, or that Complainant tried to attack Garcia.

Complainant testified that she did a load of laundry on that day, and it was her family's turn to use the clothesline. She and her husband then went to the beach. When she returned to hang up the laundry, she saw Garcia's clothes on the clothesline. She yelled for Garcia's husband to come out and he did so, and he began taking down the clothes. Complainant felt water poured on top of her head and something hit her left ear. She turned to see Garcia near her. Garcia shoved Complainant by pushing Complainant with both hands. Complainant felt shocked when the water was poured on her and afraid when she was hit. There were cuts on her ear, and it was bleeding and felt sore. Complainant then returned to her house to call the police.

Complainant's husband testified that he heard shouting as he walked back to his house from the beach, and saw Garcia yelling and swearing at Complainant. Complainant's hair, face, and upper clothing were wet. Her ear was red and had scratches on it.

Garcia's husband testified that on that day, he and Garcia used the "additional four lines on the existing clothesline" that belonged to them, but some clothes were hung on the "common clothesline" they shared, after he saw his brother's family go to the beach. Later, while he was reading, he heard

Complainant telling him in a raised voice to get his clothes off the clothesline. Complainant was very agitated. Garcia ran over to them with a bottle of water in her hand and threw the water, telling Complainant to shut up and to get away from Garcia's husband. Complainant "charged" Garcia, who tried to "ward her off with water." Garcia had to push Complainant back. Complainant then muttered, "you, you," while smiling and shaking her finger at them, and Complainant went into her house. He did not see Garcia hit Complainant, and did not see any blood or injury on Complainant.

Garcia testified that she was in the garden when she heard Complainant's raised, angry voice. She ran over and saw Complainant and Garcia's husband at the clothesline. Complainant was yelling at Garcia's husband as he removed the clothes. Garcia told Complainant to leave him alone, and Garcia shook water to try to get Complainant away from Garcia's husband and stop the fight. Garcia denied swearing at Complainant. Complainant was angry, growling, and came towards Garcia, who had to step back and push Complainant away from her. Garcia testified that she told the officer that Complainant growled at her and rushed her, and that Garcia pushed Complainant away from her.

The defense argued in closing that if Garcia pushed Complainant, Garcia did so in self-defense and should be found not guilty of Harassment. The State argued that it had proved the offensive physical contact required for Harassment beyond a reasonable doubt.

The District Court found the State's witnesses -- Officer Asuega-Stark, Complainant's husband, and Complainant -- more credible than the defense witnesses, and rejected Garcia's self-defense. The District Court found that Garcia struck Complainant and pushed her, and adjudged Garcia guilty of

Harassment.  Garcia was sentenced to pay a fine and a fee. Garcia timely appealed.

### Claim of Failure to Object to State's Leading Questions

Garcia contends that her trial counsel was ineffective because the prosecutor "asked, almost exclusively, leading questions through out [sic] the trial, to which no objections were raised."  Garcia identifies and quotes three areas in the trial record where the excessive leading questions occurred. Garcia argues that trial counsel's failure to object to the quoted portions of the transcript allowed the State to establish its case through improper leading questions, and "'steamroll' its way to a conviction."  Garcia also claims that, "It is unknown if the State would have been able to establish these elements through proper questioning."  Garcia's contention that she received ineffective assistance of counsel is without merit.

While leading questions are generally not permitted on direct examination, some leading of a witness is allowed. Hawaiʻi Rules of Evidence (**HRE**) Rule 611(c) provides:  "Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony."  Garcia's identified passages are selective excerpts from the direct examination testimonies of Officer Asuega-Stark and Complainant.  Our review of the trial transcript reflects that the direct examinations of these two witnesses started out with a series of open-ended questions, and that the majority of both direct examinations consisted of open-ended questions. Viewing the direct examinations in their entirety, the portions of the questioning identified by Garcia show that the State employed some leading questions on direct to develop pertinent details at critical junctures in the testimonies of Officer Asuega-Stark and Complainant.  This was permissible under HRE Rule 611(c).

The defendant has the burden of establishing a claim of ineffective assistance of counsel and must meet the following two-part test: (1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and (2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. State v. DeLeon, 131 Hawaiʻi 463, 478-79, 319 P.3d 382, 397-98 (2014) (citing State v. Wakisaka, 102 Hawaiʻi 504, 513-14, 78 P.3d 317, 326-27 (2003) (internal quotation marks, citations, and footnote omitted)). To satisfy the second prong, the defendant needs to show a possible impairment, rather than a probable impairment, of a potentially meritorious defense. Wakisaka, 102 Hawaiʻi at 514, 78 P.3d at 327 (citation omitted).

We note that this was a bench trial, with the District Court judge as the factfinder. "[W]here a case is tried without a jury, it is presumed that the presiding judge will have disregarded the incompetent evidence and relied upon that which was competent." State v. Antone, 62 Haw. 346, 355, 615 P.2d 101, 108 (1980) (citations omitted). The District Court judge is presumed to have appropriately considered and weighed the evidence as the factfinder. See id. In this case, Garcia also asserted self-defense at trial, which turned on the credibility of witnesses. "[I]t is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact." State v. Mattiello, 90 Hawaiʻi 255, 259, 978 P.2d 693, 697 (1999) (internal brackets and citation omitted). The District Court determined that the State's witnesses were more credible than the defense. Garcia has failed to establish that there were specific errors or omissions by trial counsel that resulted in any impairment of her credibility-based defense in this bench trial. See DeLeon, 131 Hawaiʻi at 478-79, 319 P.3d at

7

397-98.  Thus, Garcia's claim of ineffective assistance of trial counsel is without merit.

### Claim of Failure to Question the Impartiality of the Trial Judge

Garcia's argument that her trial counsel was ineffective for failing to question the trial judge's impartiality due to the trial judge's alleged relationships with the Complainant and others on Maui was not raised in her point of error in violation of HRAP Rule 28(b)(4).  None of the alleged "facts material to consideration" of this argument regarding the trial judge's alleged impartiality appears in the statement of the case, and there are no record references supporting these factual statements as required by HRAP Rule 28(b)(3).  This "impartiality" argument apparently was not raised below, and appears for the first time in the argument section of the Opening Brief, and the argument does not cite "parts of the record relied on" for any of the alleged conflicts and relationships Garcia claims regarding the District Court judge.  This argument violates HRAP Rule 28(b)(7), and is waived.  See Taniguchi, 114 Hawaiʻi at 53, 155 P.3d at 1154.

Therefore, IT IS HEREBY ORDERED that the Amended Judgment and Notice of Entry of Judgment, filed on April 16, 2018, in the District Court of the Second Circuit, is affirmed.

DATED:  Honolulu, Hawaiʻi, May 28, 2021.


On the briefs:

Joshua C. James
(Cain & Herren)
for Defendant-Appellant

Renee Ishikawa Delizo
Deputy Prosecuting Attorney
County of Maui
for Plaintiff-Appellee

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Karen T. Nakasone
Associate Judge